27 C.C.P.A.(Patents)

**D. J. BIELZOFF PRODUCTS CO. v. WHITE HORSE DISTILLERS, Limited.**

**Patent Appeal No. 4213.**

Court of Customs and Patent Appeals.
Dec. 4, 1939.

584

James P. Burns, of Washington, D.C., for appellant.

Randolph B. Cousins, of New York City (Cousins & Cousins, Christopher C. Cousins, Alden D. Redfield, and Francis E. Boyce, all of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences sustaining appellee's notice of opposition and holding that appellant was not entitled to the registration of a trade-mark comprising the words "Red Horse" in white lettering immediately above a representation in red silhouette of a rearing horse with a rider thereon, all appearing on a black background, for use on cordials, liqueurs, brandies, rums, cocktails, gins, alcoholic bitters, alcoholic syrups for mixing drinks, and ethyl alcohol.

In its application for registration, appellant stated that it had used its trademark on its goods since February 9, 1934.

As originally filed, appellant's application included whiskies along with the other beverages on which it claimed to have used its trade-mark. The term "whiskies" was cancelled, however, by an amendment to the application, made subsequent to the decision of the Examiner of Interferences and while the appeal was pending before the Commissioner of Patents.

It appears from the record that for approximately seven years prior to February 9, 1934, appellant and its predecessor were engaged in the manufacture and sale of non-alcoholic cordials, syrups, and extracts; that about two years prior to the repeal of the Eighteenth Amendment, U.S. C.A.Const., December 6, 1933, appellant's predecessor, D. J. Bielzoff Products Company, a partnership, used a trade-mark comprising the word "Incomparable" in white lettering immediately above a representation in red silhouette of a rearing horse with a rider thereon, and the initials "D. J. B.," also in white lettering, in a circle in the upper left-hand corner of the label, all appearing on a black background, on its non-alcoholic cordials, syrups, and extracts; that the appellant company was incorporated in November 1933, and shortly thereafter acquired the property and good will of the D. J. Bielzoff Products Company; that shortly after the repeal of the Eighteenth Amendment, appellant commenced the manufacture and sale of the alcoholic beverages hereinbefore set forth; and that, on February 9, 1934, appellant changed its trade-mark by substituting the term "Red Horse" for the term "Incomparable" and omitting the initials "D. J. B," and, on that date, proceeded to use the mark so changed on its goods.

It further appears from the record that appellee, a British corporation, is the owner of the following trade-mark registrations: registration No. 101072, dated November 10, 1914, of a trade-mark comprising a pictorial representation of a white horse, together with the words "White Horse Cellar," for use on Scotch whisky; registration No. 312106, dated March 13, 1933, of a trade-mark comprising a pictorial representation of a white horse, appearing on a black background, togeth-

er with the words "The White Horse," in white lettering, for use on whisky; registration No. 302117, dated March 28, 1933, of the term "White Horse," for use on whisky; registration No. 310140, dated February 13, 1934, issued on an application filed October 7, 1933, of a trade-mark comprising the pictorial representation of a black horse and the words "The Famed Black Horse fine Old Highland Malt Whisky," the words "fine Old Highland Malt Whisky" being disclaimed apart from the mark as shown. It further appears from the record that since the repeal of the Eighteenth Amendment, December 6, 1933, to the time of the taking of the testimony for opposer in this case, May 1938, appellee has expended approximately $543,000 in advertising its product (advertised and known as "White Horse Scotch Whisky") and its white horse trade-mark, registration No. 101072, throughout the United States in newspapers, periodicals, trade papers, menus, catalogues, wine lists, programs, posters, Christmas cards, window displays, and in distributing miniature white horses; that miniature white horses are attached to the neck of each bottle of appellee's "White Horse Scotch Whisky"; that Browne Vintners Company, Incorporated, importer and distributor of wines and liquors, imports and sells in the United States appellee's "White Horse Scotch Whisky"; that the Browne Vintners Company has advertised appellee's product to the extent and in the manner hereinbefore stated; that it has not advertised appellee's "Black Horse" whisky; and that it is not an uncommon practice in the liquor trade for a producer to market its products under closely related trade-marks; such as, for example, Seagram's "Five Crown" and "Seven Crown," Hiram Walker's "King of Clubs," "Queen of Clubs," and "Jack of Clubs," and Gooderham & Worts' use of "Three Star" and "Five Star."

There is no evidence of record relative to the use of appellee's trade-mark "Black Horse" in the United States, and, although counsel for appellant argue that it is not used in this country, it is sufficient to say that appellee's registration of the mark is prima facie evidence of ownership, section 16, Trade-mark Act 1905, 15 U.S.C.A. § 96, and will be considered as presumptively valid in this proceeding. Ely & Walker Dry Goods Co. v. Sears, Roebuck & Co., 24 C.C.P.A.,Patents, 1244, 1247, 90 F.2d 257.

The goods of the respective parties possess the same descriptive properties, and the sole issue presented by this appeal is whether the involved marks are confusingly similar.

It is argued by counsel for appellant that as the witnesses for appellee had no personal knowledge of any confusion in trade as a result of the concurrent use by the respective parties of their marks, such fact is a circumstance to be seriously considered in determining whether or not the involved marks are confusingly similar.

The issue here is whether the involved marks so nearly resemble one another as "to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers" if used concurrently on the goods of the respective parties, and the failure to establish actual confusion in trade is not of vital importance. Section 5, Trade-mark Act of 1905, 15 U. S.C.A. § 85; Apex Electrical Manufacturing Co. v. Landers, Frary, & Clark, 17 C. C.P.A.,Patents, 1184, 41 F.2d 99.

It is also argued here by counsel for appellant, as it is in many cases of this character, that even a child upon comparison would readily recognize the difference between the "White Horse" and "Red Horse" trade-marks.

We have repeatedly held that, in determining the question of confusing similarity, "side-by-side comparison" of trademarks is not a proper test. The test rather is whether a "casual purchaser" would be likely to be confused by the concurrent use of the marks on the goods of the respective parties. Furthermore, the marks should not be dissected, but should be considered as a whole. See Gilmore Oil Co., Ltd., v. Wolverine-Empire Refining Co., 21 C.C.P.A.,Patents, 943, 69 F.2d 532.

Of course, one served with a glass of "Red Horse" gin, cordial, liqueur, brandy, or rum would not likely believe that he was drinking a glass of "White Horse Scotch Whisky," but those familiar with "White Horse" or "Black Horse" Scotch whiskies might readily believe that "Red Horse" cordials, liqueurs, brandies, rums, cocktails, gins, and alcoholic bitters have the same origin, and that, as we understand it, is the argument made here by counsel for appellee. Furthermore, it appears from the record that appellee advertises "White Horse" cocktails, and it might well be that one served with a "Red Horse" cocktail (the ingredients of which

586

are not shown in the record) would believe that it was a "White Horse" cocktail.

 Cases are cited and relied upon by counsel for each of the parties in support of their contentions here presented. In view of the fact, however, that in this case, as in all cases of this character, "the issues must be determined in accordance with the peculiar facts and circumstances of record," those decisions are not determinative of the issues here. Gilmore Oil Co., Ltd., v. Wolverine-Empire Refining Co., supra [21 C.C.P.A.,Patents, 943, 69 F.2d 535]. One of the cases relied upon by the Examiner of Interferences, and which was cited by counsel for appellee, is that of American Fruit Growers, Inc., v. Michigan Fruit Growers, Inc., 17 C.C.P.A.,Patents, 906, 38 F.2d 696. The issues in that case are somewhat analogous to the issues in the case at bar. We there held that a trade-mark "consisting of the word 'Michigander' and representations of two or three kinds of fruit inclosed within a double circle, together with an 'outline tracing of the lower peninsula of Michigan, and the representation of a *goose in white*' upon a black and white background, for use on fresh and canned fruits" was confusingly similar with the trade-mark comprising "the words *'Blue Goose,'* appearing immediately above the representation of a 'blue goose' enclosed within a double circle" for use on fresh fruits and vegetables. (Italics not quoted.)

 It would seem to be clear that if appellant is entitled to register its "Red Horse" trade-mark for use on its alcoholic beverages in view of appellee's "White Horse" and "Black Horse" trade-marks, other producers of alcoholic beverages might well argue that they were entitled to the registration of such trade-marks as "Brown Horse," "Gray Horse," "Sorrel Horse," "Bay Horse," and possibly other similar marks for use on such beverages.

That the use and registration of such marks on alcoholic beverages would destroy the value of appellee's registered marks, is so apparent as to require no discussion.

We have given careful consideration to all of the arguments advanced by counsel for appellant, but are unable to concur in the view that the tribunals of the Patent Office erred in holding that the concurrent use of the marks of the parties on their respective goods would be likely to cause

confusion in the trade and to deceive purchasers.

The decision of the Commissioner of Patents is affirmed.

Affirmed.