49 CCPA

**Application of BURNDY CORPORATION.**
**Patent Appeal No. 6736.**

United States Court of Customs and Patent Appeals.
April 11, 1962.

Ernest Fanwick, Norwalk, Conn. (Robert I. Dennison, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge JOSEPH R. JACKSON, Retired.

RICH, Judge.

This appeal is from the affirmance by the Patent Office Trademark Trial and Appeal Board of the ex parte rejection of appellant's application to register a trademark on the Principal Register, Ser. No. 60,798, filed October 17, 1958. The ground of rejection is that registration is prohibited by section 2(d) of the Trademark Act of 1946, 15 U.S.C.A. § 1052(d), since appellant's mark so resembles the mark of prior registration No. 534,100, issued November 28, 1950, as to be likely to cause confusion, mistake, or deception of purchasers, assuming use of the marks on the goods of applicant and of the prior registrant respectively.

Appellant's mark may be generally described as consisting of the mere external outline of the capital letter "B", heavily shaded on the right and bottom, over which outline there is superposed an outline of a conventionalized lightning stroke which extends somewhat above and below the letter outline, the latter outline also being shaded on the right and lowermost sides. The goods named in the application are "Electrical Connectors."

The mark of the prior registration, which was granted to The Bead Chain Manufacturing Company, Bridgeport, Conn., is a solid, heavy capital letter "B" having a distinctive feature in that the rounded portions of the letter to the right and the enclosed openings of the letter are so formed as to resemble somewhat two beads of a bead chain.[1] So viewed, each bead is spherical with a black right half or hemisphere and a white left half. The two white hemispheres form the openings of the letter "B". The goods enumerated in the registration are: "Radio contact pins, radio contact prongs, contact points, contact jacks, terminals, and sleeve attachments for outlet caps, in Class 21, Electrical apparatus, machines, and supplies."

The record contains no proofs of any kind as to the nature of the above-named goods and we shall assume, as appears to us to be the case, that some, at least, of the goods named in the registration are electrical connectors of sorts and, therefore, that there is at least partial identity of goods. The sole issue, then, is whether the marks so resemble each other as to fall within the section 2(d) prohibition, as the board held they did.

In our view, this case must be decided primarily on the basis of visual

---

1. Encyclopaedia Britannica (1942), vol. 5, p. 189, under "Chain Manufacture", thus describes bead chain: "Bead or ball chain, commonly used in electric light fixtures, consists of a series of hollow balls joined by solid bars, the latter having a ball or cross-pipe formed at its ends. This chain is also made entirely by automatic machines."

similarity of the marks. The marks are not word marks and are not capable of being spoken. They are design marks and, although each is based on a capital letter "B", there are great dissimilarities between them which can be fully appreciated only from seeing them. The board's opinion is published at 125 USPQ 497 and contains reproductions of the marks, to which reference is hereby made.

Viewed as a whole, as they must be in deciding this issue, it is the collective judgment of this court that the marks are so distinctly different in appearance that they would not be likely, if in concurrent use, to cause confusion or mistake or to deceive purchasers. Since this is, of necessity, a subjective opinion, no amount of discussion of the matter can add to the statement of our conclusion which is predicated on the apparent visual differences in the marks.

The Patent Office solicitor argues that, as spoken, the marks would have the same sound. As we said, we do not believe that the marks can be spoken. The letter "B" can be spoken, but neither of the marks under consideration is simply the letter "B". Each is a composite of which the letter is but a part, particularly appellant's mark. In normal use of the marks we do not believe that either of them would be spoken, as, for example, in calling for the goods. They stand, therefore, in the posture of classical trade *marks*, as devices or symbols associated with the goods to designate their origin.[2] We do not believe that one seeing appellant's mark or symbol on goods would be likely to think that they had a common origin with goods bearing the registered mark or symbol, even when the specific appearance of the latter might be dimmed by faulty recollection. We therefore disagree with the solicitor's view that "the several marks would, to the or-

dinary purchasers, partake of a similar appearance." They do not have similar appearance and we do not understand how they could "partake" of it.

A section of appellant's brief entitled "Commercial Facts" deals with the business of appellant, the nature of the goods it allegedly sells, and the purchasers who buy them, urging that they would be discriminating. We have no way of knowing the truth of any of the matters stated since the record is devoid of supporting evidence. A brief cannot take the place of proof and in its absence we disregard all such factual assertions where they are not matters of such common knowledge that we can take judicial notice of them.

The decision of the board affirming refusal of registration is reversed.

Reversed.

2. See, for example, on the early use of symbols to identify ownership or origin of goods, Nims, "Unfair Competition and Trade-Marks," 4th Ed., § 185, pp. 509–510; and for greater detail see Frank I. Schechter, "The Historical Founda-

tions of the Law Relating to Trade-Marks," especially the frontispiece and the illustration facing p. 117, showing coopers' marks in use in 1420 and seventeenth century cutlers' marks respectively.