**VOLKSWAGENWERK
AKTIENGESELLSCHAFT,
Appellant,**

v.

**ROSE'VEAR ENTERPRISES,
INC., Appellee.**

**Appeal No. 78–629.**

United States Court of Customs
and Patent Appeals.

March 1, 1979.

---

F. M. deRosa, Watson, Cole, Grindle & Watson, Washington, D. C., attorneys of record, for appellant.

Grover A. Frater, Nienow & Frater, Santa Ana, Cal., attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

1. Applicant's business entails the wholesale and retail sales of parts and accessories. Applicant owned some retail outlets and franchised a number of other retail outlets to utilize

BALDWIN, Judge.

This is an appeal from the decision of the Patent and Trademark Office Trademark Trial and Appeal Board (board) dismissing appellant's opposition to applicant's registration of the following service mark for the retail and wholesale selling of accessories for automobiles. We affirm.

*Background*

Applicant is a manufacturer, distributor and retailer of automotive parts, components and accessories for the "after sales" market. This market comprises purchasers who use the parts and accessories to customize the appearance or modify the performance of motor vehicles. The record establishes that a major portion of applicant's business involves the sale of parts and accessories for customizing and modifying a particular model of the automobiles manufactured and sold by the opposer. The particular model is the Volkswagen Sedan, also known as the "Beetle" or "Bug."

Since 1970 or 1971 applicant has continuously used the mark shown above to identify its products and services.[1] The mark has been used on applicant's business establishments, on packaging materials and promotional items, in catalogues and advertising, and on cars participating in races specifically conducted for modified automobiles of the type manufactured by opposer. Applicant's president stated in his deposition that

the mark in connection with automobile accessory stores. Some of the parts sold by the applicant and by the franchisees were manufactured by the applicant.

the mark is a customized or a caricature of a customized Volkswagen sedan.

Opposer is a West German manufacturer of motor vehicles, parts and accessories which are sold throughout the world. Opposer operates in the United States through a wholly owned subsidiary, Volkswagen of America (VWOA). In detailing the extent of opposer's business, Mr. Jones, Manager of Sales for VWOA, stated that opposer had sold some 4,943,848 vehicles in the period 1949–1976. Mr. Gruber, VWOA advertising manager, stated that $197 million had been expended on advertising from 1970–1976.

Opposer owns U. S. trademark registrations for "Volkswagen," "VW" and "VW" within a circle. Further, opposer claims that the terms "Bug" and "Beetle," as well as the silhouette and design of the "Beetle" sedan, have acquired secondary meaning, and identify opposer as the source of the vehicles as well as the source of parts and accessories for the vehicles.[2]

The substance of opposer's complaint is set forth in paragraphs 5 and 7 of the Notice of Opposition which state:

5. Applicant's mark, a design of a vehicle, is so similar in all respects to opposer's vehicle design as to be likely when used in association with the services of the applicant, to cause confusion or to deceive purchasers in the mistaken belief that the services of the applicant, emanate from, or are offered for sale, or are sold under opposer's approval, sponsorship or control, all to the great damage of the opposer.

7. Opposer with its dealers and distributors over a period of many years expended much time, effort and money in advertising and in otherwise promoting the sale of its goods and services, and in encouraging the public and the trade recognition of its goods and services under the marks VW in a Circle, VW, VOLKSWAGEN, and the Vehicle Design, wherefore the registration sought by the applicant, if granted, will enable applicant to reap the benefits of such goodwill and reputation attached to opposer's marks to opposer's irreparable damage and injury as a result of confusion which is likely to arise.

### The Board Opinion

The board considered the depositions and exhibits and determined that the design and silhouette of opposer's "Beetle" sedan have become so "well known to the American public as identifying products and services sold by opposer's authorized dealers and that, as a consequence, prior to applicant's commencement of its business under the mark in issue, the 'Volkswagen' vehicle shape had acquired secondary meaning in the automotive industry denoting opposer as the source of these vehicles." The board considered the evidence submitted by applicant and found it insufficient to establish the public recognition and association of its mark that is required to show that the mark had acquired secondary meaning. These determinations were not dispositive of the likelihood of confusion, and the board reached its final conclusion in the following manner:

This leads us to a consideration of applicant's mark vis-a-vis opposer's silhouette. Since these marks are not word marks and are not capable of being spoken, this issue must be decided on the basis of the visual similarity of the marks. See: In re Burndy Corporation, [300 F.2d 938, 49 CCPA 967,] 133 USPQ 196 (CCPA, 1962). This, of necessity, must be a subjective opinion based upon a determination as to the normal reaction of the average customer for applicant's goods and services, who obviously would be familiar with opposer's silhouette, upon encountering applicant's mark in the normal marketing habitat therefor and, of course, in the context in which it is used as exemplified by applicant's labels, business cards, literature, and the like. It is our opinion that, while the customer would recognize applicant's caricature as a play on opposer's "VOLKS-

2. In January, 1977, Mr. Jones testified for opposer that the exterior design of the "Beetle" sedan had not been significantly changed since its introduction in 1949.

WAGEN" vehicle, the differences between them are so great and so readily apparent that the customer exercising reasonable care, caution, and perception would not be likely to equate the two and mistakenly assume that applicant's goods and services emanate from or are in some way associated with the producer of the "VOLKSWAGEN" or "BUG" vehicle. These differences bestow upon applicant's mark a distinct, individual personality peculiar to applicant's activities and one that is separate and distinct from opposer and its various marks. [Footnote omitted.]

### Opposer's Arguments

The opposer attacks the board opinion on a number of grounds. First, opposer argues that since the board found applicant's mark to be a caricature of the "Beetle" design, then the overall commercial impressions created by the respective marks are identical and applicant's mark wrongly suggests either opposer is the source of the products and services or applicant is a distributor or dealer authorized by opposer. Second, opposer states that the board relied upon an improper side-by-side comparison of the marks and that the board was unduly impressed by the lack of actual confusion. Opposer further argues that the board applied the wrong standard of purchaser commercial awareness in its analysis. Finally, opposer states that its reputation for quality will be unfairly endangered by applicant's use of its mark.

### OPINION

Even assuming that the board correctly determined that the exterior design of opposer's "Beetle" sedan had acquired secondary meaning among the purchasing public, we do not agree with opposer's contentions. The mere fact that a mark is a caricature of another mark does not mean, as opposer contends, that the marks create the same commercial impressions. Such marks must be compared in the same manner as any other design marks. The proper test to be applied in such instances was articulated in *In re ATV Network, Ltd.*, 552 F.2d 925, 927, 193 USPQ 331, 332 (CCPA 1977), where this court stated:

[I]n a case such as this, involving two design marks which are not word marks and are not capable of being spoken, the question must be decided primarily on the basis of visual similarity of the marks.

Necessarily, this is a subjective determination, *In re Burndy*, 300 F.2d 938, 49 CCPA 967, 133 USPQ 196 (1962), and must take into the account the commercial impressions of the marks on *casual purchasers*. *D. J. Bielzoff Products Co. v. White Horse Distillers, Ltd.*, 107 F.2d 583, 27 CCPA 722, 43 USPQ 397 (1939). We are satisfied that the board properly considered these principles in reaching its decision.

Concerning opposer's claim that the board improperly considered the absence of actual confusion, we agree that such a showing is not required when determining the likelihood of confusion. *Id.* 107 F.2d at 585, 27 CCPA at 724, 43 USPQ at 399, but we cannot agree that this factor was determinative in the board's decision.

Finally, we are of the opinion that adhering to traditional considerations when determining the likelihood of confusion between two design marks will more adequately protect the rights of all parties involved than would the promulgation of a rule, as asserted by opposer, that all caricatures of a mark are *ipso facto* likely to cause confusion with the original mark.

Since we find no likelihood of confusion from the concurrent use of the marks in issue on the goods or services of the parties, the decision of the Trademark Trial and Appeal Board is *affirmed.*

AFFIRMED.

MARKEY, C. J., dissents.