THIS DISPOSITION IS
CITABLE AS
PRECEDENT OF THE TTAB

Oral Hearing:  June 29, 2006     Mailed:  September 26, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Homeland Vinyl Products, Inc.

_____

Serial No. 76361399

_____

Robert J. Veal of Smith, Gambrell & Russell, LLP for Homeland
Vinyl Products, Inc.

David H. Stine, Trademark Examining Attorney, Law Office 114 (K.
Margaret Le, Managing Attorney).

_____

Before Hohein, Grendel and Holtzman, Administrative Trademark
Judges.

Opinion by Holtzman, Administrative Trademark Judge:

Applicant, Homeland Vinyl Products, Inc., seeks to register
the mark shown below on the Supplemental Register for goods which
were ultimately identified as "non-metal fence rails" in Class
19.[1]  The application states that "the mark consists of the
configuration of a fence rail" and that "the lining in the mark

_____

[1] Application Serial No. 76361399, filed January 18, 2002, alleging a
date of first use and first use in commerce on January 11, 2002.

is for shading purposes only and does not represent color."



The trademark examining attorney has refused

registration under Section 2(d) of the Trademark Act on

the ground that applicant's mark, when applied to

applicant's goods, so resembles the registered mark shown

below for "non-metal fence rails" in Class 19[2] as to be

likely to cause confusion.[3]

---

[2] Registration No. 2828960, issued April 6, 2004 to Kroy Building Products, Inc. The examining attorney also initially refused registration under Section 2(d) on the basis of an additional registration (No. 2837603) owned by the same entity. The refusal as to that registration was subsequently withdrawn.

[3] Applicant originally sought registration on the Principal Register and filed an amendment to the Supplemental Register in response to an initial refusal to register the mark on the grounds of functionality and non-distinctiveness. In view of applicant's amendment to the Supplemental Register, the refusal on the basis of non-distinctiveness



The registration issued under Section 2(f) of the Act.  The mark

is described in the registration as follows:

> The mark consists of a configuration of the bottom
> portion of a fence rail bearing the exterior rounded
> shoulders and the recessed edges.  The diagonal
> bands of vertical shading lines and other lining
> shown in the drawing are not features of the mark
> and are intended only to show perspective.  The
> broken lines indicate the placement of the mark on
> the goods and are not features of the mark.  The
> drawing depicts a section of the product
> configuration and no limitations on length or size
> are intended.

---

is moot; and inasmuch as the functionality refusal was not maintained, it is deemed withdrawn.

When the refusal was made final, applicant appealed. Briefs have been filed. An oral hearing was held.

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. In re E.I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). In any likelihood of confusion analysis, however, two key considerations are the similarities or dissimilarities between the marks and the similarities or dissimilarities between the goods. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976).

Both the application and the cited registration are for the same goods, namely fence rails. Because the goods are identical, and there are no restrictions in the identification of goods, we must presume that the fence rails are sold in all normal trade channels and to all normal classes of purchasers for such goods, and that the channels of trade and classes of purchasers of applicant's and registrant's goods are the same. See Hard Rock Cafe Licensing Corp. v. Elsea, 48 USPQ2d 1400 (TTAB 1998); and In re Elbaum, 211 USPQ 639 (TTAB 1981). While there is no mention in the record as to precisely what are the normal channels of trade for fence rails or who the purchasers for those goods would be, applicant did state at the oral hearing that the products could be purchased at retail outlets such as The Home Depot.

Thus, we will assume the normal class of purchasers for the goods include not only contractors and other commercial purchasers, but also "do-it-yourself" homeowners and remodelers. However, fence rails are not impulse purchases and the construction and installation of a fence would require some level of knowledge and experience. We thus would expect that such purchasers would exercise a relatively high degree of care in their purchasing decisions.

We turn then to the marks, keeping in mind that when marks would appear on identical goods, the degree of similarity between the marks necessary to support a finding of likely confusion declines. Century 21 Real Estate v. Century Life, 970 F.2d 874, 23 USPQ2d 1698 (Fed. Cir. 1992).

The marks are configurations of non-metal fence rails. Fence rails are the horizontal portions of fence structures.[4] The configurations in the application and registration are not restricted to any particular size or length. Both fence rails contain a recessed channel at one end which is used to hold the upright vertical bars, panels or pickets of the fence. The rails

---

[4] We take judicial notice of the relevant definition of "rail" as meaning "a long horizontal or [for purposes of, e.g., a staircase] sloping piece of wood, metal or other material that is used as a barrier, support, or place to hang things. *Microsoft Encarta College Dictionary* (2001); and "a bar or series of bars, typically fixed on upright supports, serving as part of a fence ..." *The New Oxford American Dictionary* (2d ed. 2005). The Board may take judicial notice of dictionary definitions. See University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

could be used as either the top rail or the bottom rail of the fence depending on the orientation of the channel. The channel appears at the top of the design in applicant's drawing and on the bottom of the design in registrant's drawing. However, the difference in orientation of the two marks is not significant because the goods are not restricted in either the application or registration for use as only a top or a bottom fence rail. Thus, for ease of reference and comparison, we consider both marks to be a top fence rail, that is, as the rail is oriented in registrant's drawing with the channel appearing on the bottom portion of the rail.

Applicant's mark consists of a configuration of the entire fence rail and registrant's mark is described in the registration as a configuration of "the bottom portion of a fence rail bearing the exterior rounded shoulders and the recessed edges." It is the examining attorney's position that although registrant limits its trademark claim to a particular feature of the fence rail, prospective consumers "will view the respective goods in their entireties and will not be aware of the technical trademark law distinction wherein registrant claims only a specific feature of the product as a source indication." Relying on such cases as In re National Data Corp., 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985) and Specialty Brands, Inc. v. Coffee Bean distributors, Inc., 748 F.2d 669, 223 USPQ 1281 (Fed. Cir. 1984), the examining

attorney contends that this situation is analogous to a mark incorporating disclaimed matter, noting that the disclaimed matter in such marks is not disregarded in determining whether two marks are confusingly similar.

The examining attorney further argues that even if the analysis is focused only on the bottom portions of the rails, the respective contours of the two products are "quite similar" and that prospective consumers are unlikely to make any strong distinction based on "this subtle, easily-overlooked difference." The examining attorney contends that even a side-by-side comparison of the marks "serves to reinforce the striking similarity" between the marks.

Applicant contends that the examining attorney has improperly based the determination of likelihood of confusion on the similarity of "non-protected and non-protectable" portions of the configurations which, according to applicant, disregards the Supreme Court's caution against the over-extension of trade dress protection. It is applicant's contention that when the marks are viewed in their proper context they are not similar. As described by applicant, the only portion of the fence rail that registrant claims as a mark to identify the source of its fence rails are the rounded shoulder and the recessed edges on the exterior opposing sides of the rail, near the channel opening of the rail. To support its position, applicant points to the

description of the mark both in the registration and in the

addenda to the declarations of James R. Spaulding and Steve

Bennett which were submitted by registrant in support of

registration.[5]  Applicant argues that its own mark, unlike

registrant's mark, has a linear diagonal line and does not

include a curved shoulder, nor does it include any recesses.

Applicant notes that registrant owns a design patent (No.

D490,543) covering the claimed mark, and has submitted copies of

certain pages of the patent document showing different views of

the object which, according to applicant, further illustrate what

applicant views as the differences in the two designs.

Applicant also argues that registrant's mark is entitled to

a very limited scope of protection.  Applicant has submitted a

number of design and utility patents showing various

configurations of fence rails, asserting a "crowded field" of

product design.  In addition, applicant has submitted the

declaration of Maurice Coen, a salesman with applicant and a

former employee of registrant, who states that he is familiar

with both marks; that he believes that the fence rail designs are

"distinctly different"; that "the profiles of both fences are

distinct"; that based on the differences between the fence rails,

---

[5] These declarations were submitted by applicant for the first time
with its appeal brief.  However, because the examining attorney has not
objected to this evidence as untimely, and moreover has addressed the
evidence on the merits in his brief, we have treated the evidence as
properly of record.  See In re Nuclear Research Corp., 16 USPQ2d 1316,
1317, n. 2 (TTAB 1990).

he believes that consumers would not consider the designs to be similar; and that "persons looking at an erected fence from the road would notice the different appearance" of the two fence rails.

Finally, applicant maintains that there has been no actual confusion during the three-year period of concurrent use of the marks and has submitted the declaration of Randy Heath, applicant's president, attesting to the absence of actual confusion during that time.

In determining the similarity or dissimilarity of marks, we must as a general rule consider the marks in their entireties in terms of sound, appearance, meaning and commercial impression. See du Pont, supra. See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005). The marks in this case are product configurations and, like pure design marks, are consequently not capable of being spoken. Therefore, our analysis of the marks must be made solely on the basis of a visual comparison of the two marks. Cf. In re Burndy Corp., 300 F.2d 938, 133 USPQ 196 (CCPA 1962).

The question is what is the "entirety" of registrant's mark? We disagree with the examining attorney's view that the entirety of the mark encompasses the matter in broken lines. We find the examining attorney's disclaimer analogy and the cases cited in support of his position to be inapplicable here. Disclaimed

9

matter must be considered in determining the question of likelihood of confusion because such matter actually forms part of the mark.  See Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 218 USPQ 390, 395 (Fed. Cir. 1983) ("disclaimed material still forms a part of the mark and cannot be ignored in determining likelihood of confusion.").  The portion of registrant's mark shown in broken lines is not part of the registered mark.  Indeed, this matter is expressly excluded from the registered mark.[6]  See, for example, TMEP §1202.02(d) ("The matter that is shown in broken lines does not have to be disclaimed, because it does not form part of the mark.")  See also In re Water Gremlin Co., 635 F.2d 841, 208 USPQ 89, 91 (CCPA 1980) ("We, therefore, agree that appellant's container is an unregistrable feature of the claimed mark.  The examiner's requirement to delete the design (or show it in dotted lines) was entirely in order.").

As stated in the cited registration, the depiction of the upper portion of the rail above the channel is included in the drawing only to show perspective.  By construing the mark as including this matter for purposes of the likelihood of confusion analysis, the examining attorney has improperly broadened

---

[6] We make no determination as to whether the matter excluded from the mark is functional or would otherwise be considered an unregistrable feature of the registered mark.  For example, applicant's mark was found to be nonfunctional for the very features that applicant is now claiming are functional in registrant's mark.  We see no reason or need to make assumptions about the protectability of the excluded matter.

registrant's rights in the mark and has given registrant protection for matter that is not part of its registered mark. Registrant's entire mark is the flourish on the lowermost portion of the outer edges of the rail channel, a very limited and specific portion of the entire fence rail. This is the only portion of the overall product configuration that is protected by the registration. Therefore, in our analysis, we must consider only the flourish as registrant's mark, as it is shown in the registration, and we will not consider the overall product shape on which the mark might be used.

We turn then to the appropriate comparison between the marks, with certain considerations in mind. First, it is the overall visual impression of the marks derived from viewing the marks in their entireties that is controlling rather than an analysis of the specific details. See Dan Robbins & Associates, Inc. v. Questor Corp., 599 F.2d 1009, 202 USPQ 100 (CCPA 1979). The marks are similar in their placement on the product and to the extent that they both have a slight taper at the lower lip of the channel on either side of the channel opening. However, we find that the visual differences in the marks are more significant than the similarities. The overall impression of registrant's mark is soft, curved and rounded, and the overall impression of applicant's flourish is severe, angular and linear. Based on the total effect of the respective marks, rather than

their individual features, we find that the differences in the marks are sufficient to distinguish them.

We must also consider the marks in their proper context, that is, as the product shapes would be encountered by purchasers in the actual marketing environment, including their proper visual scale. It is obvious that the drawing is not representative of the actual size or length of the rails. In actual use the rails are much larger and the respective flourishes are more visible and noticeable, which, in turn, would make the differences in the designs more noticeable, as well. We note, in this regard, Mr. Coen's statement that the respective designs are noticeable from a distance on "an erected fence from the road."

Moreover, in view of the nature of the ornamental design, it appears, in this particular situation, that the registered mark is entitled to only a narrow scope of protection. The design and utility patents for fence rails show that the rails are often constructed with a channel at one end to receive fence panels. We also note that at least two of the design patents of record (Nos. D500,866; and D497,432) cover what appear to be subtle flourishes at the channel end of the rail, suggesting that it is not particularly unique or unusual to place an ornamental design on this portion of the rail, and that purchasers of fence rails

12

would be accustomed to making distinctions based on more subtle differences in the marks.[7]

In view of the foregoing, we find, notwithstanding the identity of the goods, that considering the narrow scope of protection to which registrant's mark is entitled and the relative sophistication of the purchasers for the goods, the marks are sufficiently dissimilar to avoid a likelihood of confusion.[8]

**Decision:** The refusal to register under Section 2(d) of the Trademark Act is reversed.

---

[7] We recognize that patents are not evidence of actual use. See, e.g., McCarthy § 6:11 (2006) ("...the owner of a design patent need not have commercialized or sold the patented design."). However, we also note that, at least in the context of determining functionality, the Federal Circuit, in In re Pacer Technology, 338 F.3d 1348, 67 USPQ2d 1629, 1632 (Fed. Cir. 2003), held that design patents similar to that of the applicant's design were sufficient evidence that consumers would not find applicant's design unique or unusual even without evidence of actual use of the patented designs.

[8] In making this determination, we have given little probative weight to applicant's evidence and arguments concerning the lack of actual confusion. Without evidence of the nature and geographic extent of both applicant's and registrant's use of their respective marks, we cannot determine whether a meaningful opportunity for actual confusion has ever existed. See Gillette Canada Inc. v. Ranir Corp., 23 USPQ2d 1768 (TTAB 1992). Cf. In re General Motors Corp., 23 USPQ2d 1465 (TTAB 1992).