NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**MICHAEL R. LONGSHORE,**
*Appellant,*

**v.**

**RETAIL ROYALTY COMPANY,**
*Appellee.*

_____

2014-1448

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Opposition No. 91192917.

_____

Decided: September 15, 2014

_____

MICHAEL R. LONGSHORE, of Duarte, California, pro se.

LISA PEARSON, Kilpatrick Townsend & Stockton LLP, of New York, New York, for appellee.  Of counsel were KRISTIN G. GARRIS, of New York, New York, and LAURA CRAVER MILLER, of Winston-Salem, North Carolina.

_____

Before DYK, TARANTO, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

Michael Longshore ("Longshore") sought to register a mark with the United States Patent and Trademark Office ("PTO"). Retail Royalty Company ("Retail Royalty"), the owner of a previously registered mark, opposed the registration. The Trademark Trial and Appeal Board ("Board") refused registration pursuant to 15 U.S.C. § 1052(d) because it concluded that Longshore's mark was likely to cause confusion in light of its resemblance to Retail Royalty's previously registered mark. We *affirm*.

BACKGROUND

Retail Royalty, the opposer, owns a registered mark depicting a flying bird, shown below:



*Retail Royalty Co. v. Longshore*, Opp. No. 91,192,917, slip op. at 2–3, 2014 WL 343268 (TTAB Jan. 21, 2014) ("Board Op.").[1] Retail Royalty registered its mark for "[w]earing apparel, clothing, and clothing accessories, namely, bottoms, gym suits, tops, lingerie, pants, shirts, shorts, skirts, sleep wear, sweaters, swim wear, underwear, footwear, and headwear, in Class 25." Board Op. 3 (quoting U.S. Trademark Registration No. 3,539,007). Retail

---

[1]    The Board also recognized that Retail Royalty has two other registered marks depicting flying birds, but only analyzed the registrations for the particular design shown above.

Royalty also registered its mark for "[w]earing apparel, clothing, and clothing accessories, namely, beachwear, jackets, leg warmers, loungewear, robes, scarves, in Class 25." Board Op. 3. (quoting U.S. Trademark Registration No. 3,662,110). Both registrations have the same filing date of August 24, 2006. *See* U.S. Trademark Registration Nos. 3,539,007 and 3,662,110.[2]

On May 26, 2009, Longshore filed an intent-to-use application, seeking to register a mark for clothing, reproduced below:



Board Op. 1. The application stated that the mark would be for the following goods:

> A-shirts; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Dress shirts; Hooded sweat shirts; Knit shirts; Long-sleeved shirts; Night shirts; Open-necked shirts; Polo shirts; Shirts; Shirts for suits;

---

[2] In 2014, after the Board's decision issued, Retail Royalty apparently amended one registration by deleting the category of wearing apparel in Class 25. *See* Registration No. 3,539,007. Even if we could take post-decisional amendments into account, the amendment here would have no significance because Retail Royalty's other registration continued to identify that category—wearing apparel in Class 25—as a registered usage for the mark. *See* Registration No. 3,662,110.

> Short-sleeved or long-sleeved t-shirts; Short-sleeved shirts; Sleep shirts; Sport shirts; Sports shirts; Sports shirts with short sleeves; Sweat shirts; T-shirts; Turtle neck shirts; Wearable garments and clothing, namely, shirts, in Class 25.

Board Op. 2. The PTO published Longshore's mark for opposition on October 26, 2009.

On December 7, 2009, Retail Royalty filed a Notice of Opposition, asserting that the PTO should refuse registration of Longshore's mark pursuant to 15 U.S.C. § 1052(d). That section provides that the Board may refuse to register a mark that "so resembles a mark registered in the [PTO], or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). Retail Royalty argued that the design in Longshore's application so resembled its registered mark as to create a likelihood of consumer confusion, mistake, or deception.[3]

The Board presumed that the goods associated with the marks would have the same channels of trade and classes of purchasers because the application and registration listed a number of identical goods, including, *inter alia*, shirts, pants, and footwear. The Board determined that Retail Royalty's mark is arbitrary and inherently strong when used with clothing. As both marks depict silhouettes of a bird in flight with outspread wings, the

---

[3]    Retail Royalty amended its Notice of Opposition to add a claim that Longshore did not have a bona fide intent to use his mark when he filed his application. The Board did not reach this issue, and we see no error in its refusal to address it.

Board deemed the two marks "similar in terms of appearance and commercial impression." Board Op. 12. Balancing these considerations, the Board concluded that Longshore's mark so resembled Retail Royalty's mark as to be likely to cause confusion and therefore refused to register Longshore's mark. Longshore appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

Likelihood of confusion is a legal question based on underlying facts. *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1084 (Fed. Cir. 2000). We review the Board's legal conclusion de novo and its factual findings for substantial evidence. *Id.* at 1084, 1085; *see also Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1370 (Fed. Cir. 2002).

## DISCUSSION

Longshore challenges the Board's finding of a likelihood of consumer confusion. Our predecessor court established the factors to consider when assessing the likelihood of confusion. *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973). These are known as the *DuPont* factors. *See, e.g.*, *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349 (Fed. Cir. 2011); *On-Line Careline*, 229 F.3d at 1084. This appeal implicates the following *DuPont* factors: the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; the similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use; the similarity or dissimilarity of established, likely-to-continue trade channels; and the number and nature of similar marks in use on similar goods. *See DuPont*, 476 F.2d at 1361 (listing factors); *On-Line Careline*, 229 F.3d at 1084 (same).

Longshore argues that the Board erred in characterizing both images as depicting doves, asserting that his mark is a dove while Retail Royalty's mark is in fact a bird of prey. The Board's characterization of both marks as doves is irrelevant. It is well-established that in cases "involving two design marks which are not word marks and are not capable of being spoken, the question [of the similarity of the marks] must be decided primarily on the basis of *visual* similarity of the marks." *In re ATV Network Ltd.*, 552 F.2d 925, 927 (CCPA 1977) (emphasis added); *see also*, *e.g.*, *In re Burndy Corp.*, 300 F.2d 938, 939–40 (CCPA 1962); 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 23:25 (4th ed. 2008) ("Obviously, for picture and design marks (as opposed to word marks), similarity of appearance is controlling."). Viewing the marks side-by-side, the Board recognized slight visual differences, but found the overall appearance and impression similar because both marks were silhouettes of birds with outstretched wings. We conclude that the Board's conclusion is supported by substantial evidence.

Longshore also contends that the Board erred in determining that marks would be used for goods with the same channels of trade and classes of purchasers. Before the Board, Longshore argued that his mark would be used specifically for "inspirational wear," which apparently refers to clothing that conveys an inspirational message, and submitted a website excerpt discussing the significance of doves in the Bible. On appeal, he calls the clothing "Universal Peacewear," suggesting a message that connotes support for peace. He attempts to distinguish his goods by claiming that Retail Royalty's mark is only used for women's apparel.

"Our precedent requires the Board to look to the registration to determine the scope of the goods/services covered by the contested mark." *Cunningham v. Laser*

*Golf Corp.*, 222 F.3d 943, 948 (Fed. Cir. 2000); *see also Octocom Sys., Inc. v. Houston Computer Servs., Inc.*, 918 F.2d 937, 942 (Fed. Cir. 1990) (the application controls "regardless of what the record may reveal as to the particular nature of an applicant's goods"); TMEP § 1207.01 (Apr. 2014) (requiring examiner to make determination based on "the goods or services identified in the application").

Longshore's application does not restrict the use of his mark to inspirational or peace-related clothing. Nor do Retail Royalty's registrations limit its mark to women's apparel. Rather, the application and registrations both list apparel and clothing generally as well as specific identical items, such as shirts, pants, jackets, and footwear. When an application and registration list identical goods, "'absent restrictions in the application and registration, goods and services are presumed to travel in the same channels of trade to the same class of purchasers.'" *In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012) (quoting *Hewlett–Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268 (Fed. Cir. 2002) (citing *CBS Inc. v. Morrow*, 708 F.2d 1579, 1581 (Fed. Cir. 1983))). Because substantial evidence supports the Board's finding that the application and registrations list certain identical goods, the Board did not err in presuming that the goods would have the same channels of trade and classes of consumers.

Finally, Longshore contends that the Board erred in failing to consider a third party's use of a bird silhouette design when assessing the strength of Retail Royalty's mark. To support his application, Longshore submitted an excerpt from a website that depicts a textual mark accompanied by a bird design, as shown below:



Board Op. 9. In fact, the Board did consider this design when assessing the strength of Retail Royalty's registered mark, but ultimately concluded that its probative value was limited given the absence of any evidence indicating the extent of the design's usage or exposure to the public. We have held that "[t]he probative value of third-party trademarks depends entirely upon their usage." *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1373 (Fed. Cir. 2005). Here, "where the 'record includes no evidence about the extent of [third-party] uses . . . [t]he probative value of this evidence is thus minimal.'" *Id.* at 1374 (alterations in original, emphasis in original omitted) (quoting *Han Beauty, Inc. v. Alberto–Culver Co.*, 236 F.3d 1333, 1338 (Fed. Cir. 2001)). The Board did not err in concluding that the design reflected in the website had limited probative value when there was no evidence showing the extent of its usage or the public's awareness of its existence.[4]

---

[4] Longshore also relied on a pending application for the Hollister mark. The Board did not err in declining to give weight to this submission because, as the Board explained, "[p]ending applications are evidence only that the applications were filed on a certain date; they are not evidence of use of the marks." Board Op. 4 n.5 (citing *Nike Inc. v. WNBA Enters. LLC*, 85 USPQ2d 1187, 1193 n.8 (TTAB 2007); *Interpayment Servs. Ltd. v. Docters & Thiede*, 66 USPQ2d 1463, 1468 n.6 (TTAB 2003); *In re Juleigh Jeans Sportswear, Inc.*, 24 USPQ2d 1694, 1699 (TTAB 1992)); *see also Conde Nast Pubs., Inc. v. Miss Quality, Inc.*, 507 F.2d 1404, 1406–07 (CCPA 1975)

Longshore has shown no error in the Board's decision.

**AFFIRMED**

Costs

No costs.

---

("There is no evidence of actual use, and this court has made clear that, without such evidence, third party registrations are entitled to little weight on the question of likelihood of confusion.").