THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

JMM

November 21, 2023

Opposition No. 91269187

*Monster Energy Company*

*v.*

*Critical Role, LLC*

**Before Taylor, Dunn, and Johnson,**
**Administrative Trademark Judges.**

**By the Board:**

Applicant, Critical Role, LLC, seeks registration of the mark  for the

following goods and services:[1]

— Audio and video recordings featuring television programs, television series,
documentaries, comedy, interviews, storytelling, animation, personal
biographies, and musical performances; digital media, namely, audio,
video, text, animation, and graphical content in the nature of pre-recorded
video cassettes, digital video discs, digital versatile discs, downloadable
audio and video recordings, DVDs, and high definition digital discs
featuring television programs, television series, documentaries, comedy,
interviews, storytelling, animation, personal biographies, and musical;
downloadable multimedia content in the nature of pre-recorded video
cassettes, digital video discs, digital versatile discs, downloadable audio and
video recordings, DVDs, and high definition digital discs featuring audio,
video, text, animation, and graphical content, downloadable via a global
computer network and wireless devices, namely, television programs,

---

[1] Application Serial No. 88911955 was filed on May 12, 2020, under Section 1(b) of the
Trademark Act, 15 U.S.C. § 1051(b). The application includes a description of the mark
statement as follows: "The mark consists of stylized letters 'V' and 'M' oriented vertically
within a circle."

television series, documentaries, comedy, interviews, storytelling, animation, personal biographies and musical performances; downloadable podcasts in the field of fantasy, role playing, games, animation and fiction (International Class 9);

— Jewelry (International Class 14);

— Printed publications, namely, books in the fields of fantasy, fiction, animated cartoons and role playing games; printed publications, namely, magazines and printed periodicals in the field of role playing, fantasy, and animation; posters; stickers; decals; bumper stickers; post cards; trading cards, other than for games; note cards; sketch books; comic books; greeting cards; lithographs; newsletters about fantasy, role playing, games, animation and fiction; journals in the field of fantasy, role playing, games, animation and fiction; manuals in the field of fantasy, role playing, games, animation and fiction; book covers; folders; loose-leaf and ring binders; notebooks; art and craft clay, paint and paper kits; pens; pencils; paperweights; pictures; wrapping paper (International Class 16);

— Beverage glassware; mugs; drinking glasses; drinking vessels; coasters, not of paper or textile (International Class 21);

— Clothing, namely, shirts, t-shirts, sweatshirts, hooded sweatshirts, underwear, one-piece garments for babies, camisoles, pants, shorts, bandanas, pullovers, scarves; headwear; hats; caps being headwear; outerwear, namely, coats, hats, gloves; footwear; socks; shirts; shorts; sweatshirts; pullovers; pants; scarves; cosplay costumes; costumes for use in role-playing games (International Class 25);

— Toys, namely, action figures and accessories therefore, dolls, modeled plastic toy figurines, puppets, board games, decorative ornaments in the nature of Christmas tree ornaments and decorations, plush toys, playing cards, toy balloons, toy and scale model vehicles, scale model toy kits, theatrical masks, trading cards for games, dice, cups for dice (International Class 28);

— Streaming of audio and video material via a global computer network; telecommunication services, namely, transmission of television, radio, film, and multimedia content via wireless communication networks, radio, satellite, cable television, and global computer networks; providing on-line forums for fantasy, role playing, games, animation and fiction; providing on-line chat rooms for social networking; video-on-demand transmission services; streaming of video material over the internet (International Class 38); and

— Publishing of books, e-books and audio books; online publication of electronic books and journals; production of radio and television programs; scriptwriting, other than for advertising purposes; television and radio entertainment, namely, providing continuing television and radio shows

featuring fantasy, role playing, games, animation and fiction; providing films and television programs, not downloadable, via video-on-demand services; theatre productions; film directing, production and distribution, other than for advertising; entertainment services, namely, providing an ongoing audio and visual program in the nature of digital multimedia programs with audio and video content, featuring comedy, unscripted reality, variety, fantasy, and talk show elements, that is broadcast, live or recorded, over a global computer network, satellite, cable television, television, radio, and to mobile devices (International Class 41).

On May 7, 2021, Opposer, Monster Energy Company, filed a notice of opposition on the grounds of likelihood of confusion pursuant to Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), and dilution by blurring pursuant to Section 43(c), 15 U.S.C. § 1125(c). Opposer alleges prior common law rights in and registration of several marks consisting of or comprising the following design: (hereinafter, Opposer's "Claw Mark") for various goods and services, including clothing, stickers, jewelry, and drinks.[2] Applicant, in its Answer, denies the salient allegations of the notice of opposition.[3]

This case comes before the Board for consideration of Applicant's motion for summary judgment as to Opposer's Section 2(d) claim only. The motion is contested.

## I.   Applicable Legal Principles

Summary judgment is an appropriate method of disposing of cases in which there are no genuine disputes of material fact and the moving party is entitled to judgment

---

[2] 1 TTABVUE 30–39 (N. of Opp. ¶ 13). Opposer submitted with the notice of opposition copies of printouts showing the current status and title of the pleaded registrations, obtained from USPTO electronic databases, (N. of Opp. Exhibits 1–21, at 1 TTABVUE 54–160). Thus, the registrations are properly of record pursuant to Trademark Rule 2.122(d)(1), 37 C.F.R. § 2.122(d)(1).

[3] 6 TTABVUE.

as a matter of law. *See* Fed. R. Civ. P. 56(a). A party moving for summary judgment has the burden of demonstrating there is no genuine dispute of material fact remaining for trial and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidentiary record and all reasonable inferences to be drawn from the undisputed facts must be viewed in the light most favorable to the nonmoving party. *Olde Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992).

To prevail on summary judgment, Applicant must demonstrate that there is no genuine dispute of material fact that the contemporaneous use of the parties' respective marks on their respective goods and services would not be likely to cause confusion, mistake or to deceive consumers regarding the source of the respective goods and services. *Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.*, 60 USPQ2d 1733, 1735 (TTAB 2001). Likelihood of confusion depends on an analysis of all of the probative facts in evidence that are relevant to the thirteen factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) (*DuPont*). From case to case, any of the thirteen factors may play a dominant role, and a single *DuPont* factor may be dispositive. *Kellogg Co. v. Pack'em Enters., Inc.*, 951 F.2d 330, 21 USPQ2d 1142, 1145 (Fed. Cir. 1991). Generally, "the 'similarity or dissimilarity of the marks in their entireties' is a predominant inquiry." *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002) (citing *DuPont*, 177 USPQ at 567). Indeed, where the marks are sufficiently different, the dissimilarity of the marks may be dispositive in the analysis. *See, e.g., Odom's*

4

*Tenn. Pride Sausage, Inc. v. FF Acquisition, LLC*, 600 F.3d 1343, 93 USPQ2d 2030, 2032 (Fed. Cir. 2010) ("[A] single *DuPont* factor may be dispositive in a likelihood of confusion analysis, especially when that single factor is the dissimilarity of the marks.") (citation omitted).

## II.   Analysis and Decision

It is Applicant's position that the first *DuPont* factor, i.e., the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression, is dispositive of Opposer's likelihood of confusion claim, and that it is entitled to summary judgment because there is no genuine dispute of material fact that the parties' respective marks are dissimilar as a matter of law. In particular, Applicant argues "even if all other relevant *DuPont* factors were considered in Opposer's favor," confusion is not likely.[4]

In response, Opposer contends that there are genuine disputes of material fact as to the first *DuPont* factor because "there are numerous similarities between Applicant's Mark and Opposer's Claw Icon Marks." For example, it maintains that "Opposer's Claw Icon Marks all consist of or include a stylized 'M' design . . . [and] Applicant's Mark also resembles a stylized 'M' design with both parties'[] designs beginning and ending with sharp points."[5] Moreover, according to Opposer, "[t]he legs of these 'M' designs also become thinner when viewed from top to bottom and the top of the 'M' in both parties' designs is depicted with sharp tips that point horizontally

---

[4] 9 TTABVUE 5.

[5] 18 TTABVUE 7.

as opposed to vertically."[6] In addition, Opposer argues that because the parties' goods include a number of identical goods, "there must be a greater degree of dissimilarity between the two marks for the first *DuPont* factor to weigh in Applicant's favor."[7]

Although Opposer properly made of record several pleaded registrations, we focus our analysis on Opposer's Claw Mark, the subject of Registration No. 4051650, for "clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies," because this mark does not include additional wording or design elements, and the goods are in-part identical to those listed in the application. If we find no likelihood of confusion between Opposer's Claw Mark and Applicant's mark, we would not find confusion likely based on any of Opposer's other pleaded marks that contain additional distinguishing features. *In re Max Cap. Grp.*, 93 USPQ2d 1243, 1245 (TTAB 2010).

The parties' respective marks are shown below:

| Opposer's Claw Mark | Applicant's Mark |
|---|---|
| | |

Although we set the marks out next to each other for ease of reference, in comparing the marks, we are mindful that "[t]he proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in

---

[6] *Id.*

[7] *Id.* at 7–8.

terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)). In a case where the marks are not word marks, visual dissimilarities can be dispositive. *See, e.g.*, *Odom's Tenn. Pride Sausage*, 93 USPQ2d at 2032; *In re Electrolyte Lab'ys, Inc.*, 929 F.2d 645, 16 USPQ2d 1239, 1240 (Fed. Cir. 1990); *Volkswagenwerk AG v. Rose'Vear Enters., Inc.*, 592 F.2d 1180, 201 USPQ 7, 9 (CCPA 1979); *In re Burndy Corp.*, 300 F.2d 938, 133 USPQ 196, 197 (CCPA 1962).

We begin with Opposer's Claw Mark. It consists of three downward jagged and crooked lines of approximately equal size that resemble claw scratches and are connected at right angles. Applicant's mark, on the other hand, consists of smooth lines, with two lines curving down to follow the shape of a background circle, two shorter lines which are diagonal and meet in the middle of the design, and two additional, diagonal lines which appear above the other lines and extend from the background circle to meet in the middle of the design. Unlike Applicant's mark, there is nothing circular in Opposer's Claw Mark, and Applicant's mark does not resemble claw scratches. When the marks are perceived in their entireties, these clear visual distinctions between the marks create very different commercial impressions.

Furthermore, Opposer contends that its mark consists of a stylized version of the letter "M," and Applicant contends that its mark features a highly-stylized letter "V"

above a letter "M."[8] Even if each mark is perceived and understood as containing a stylized version of the letter M, as the parties allege, the differences remain noticeable. The letter M as presented in the marks is stylized with such different shapes and types of lines that the marks as a whole do not resemble one another. With marks this different, confusion is unlikely.

For these reasons, we find that Applicant has satisfied its burden of establishing the absence of any genuine disputes of material fact with regard to the dissimilarity of Opposer's Claw Mark and Applicant's mark. Applicant is therefore entitled to judgment as a matter of law on its Section 2(d) claim inasmuch as we conclude that, based on one *DuPont* factor—the dissimilarity of the marks— there is no likelihood of confusion. Even considering all other relevant *DuPont* factors in Opposer's favor, we find that Applicant's mark is so dissimilar to Opposer's pleaded marks that this factor outweighs the other factors and is dispositive in our likelihood of confusion analysis. *Quiktrip W., Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 2021 USPQ2d 35, at *5 (Fed. Cir. 2021) (affirming Board's determination to give dispositive weight to the dissimilarity of the marks even where other factors such as identical-in-part goods, overlapping trade channels and classes of customers, and similar conditions of purchase weighed in favor of likelihood of confusion); *Oakville Hills Cellar, Inc. v. Georgallis Holdings, LLC*, 826 F.3d 1376, 119 USPQ2d 1286, 1289–90 (Fed. Cir. 2016) (Board did not err in finding confusion unlikely, notwithstanding the identity of goods, channels, and customer classes, the marks were sufficiently dissimilar as to

---

[8] 9 TTABVUE 15–16; 18 TTABVUE 7.

appearance, sound, meaning, and commercial impression); *Odom's Tenn. Pride Sausage,* 93 USPQ2d at 2032 ("[E]ven if all other relevant *DuPont* factors were considered in Odom's favor, as the board stated, the dissimilarity of the marks was a sufficient basis to conclude that no confusion was likely.").

Accordingly, Applicant's motion for partial summary judgment is **granted**, and the opposition is dismissed with prejudice as to Opposer's Section 2(d) claim.

### III.    Dilution Claim Remains Pending

Applicant contends that a finding in its favor on Opposer's Section 2(d) claim renders Opposer's dilution claim moot.[9] This is inaccurate. *See* Trademark Act Section 43(c)(1), 15 U.S.C. § 1125(c)(1) (dilution may or may not exist "regardless of the presence or absence of actual or likely confusion"). Opposer's dilution claim remains pending, and to the extent that Applicant seeks summary judgment as to that claim, Applicant must file such a motion with the Board.

### IV.    Proceeding Schedule

Proceedings are resumed with respect to Opposer's dilution claim. Remaining dates are reset as follows:

| | |
|---|---|
| Expert Disclosures Due | 3/13/2024 |
| Discovery Closes | 4/12/2024 |
| Plaintiff's Pretrial Disclosures Due | 5/27/2024 |
| Plaintiff's 30-day Trial Period Ends | 7/11/2024 |
| Defendant's Pretrial Disclosures Due | 7/26/2024 |
| Defendant's 30-day Trial Period Ends | 9/9/2024 |
| Plaintiff's Rebuttal Disclosures Due | 9/24/2024 |
| Plaintiff's 15-day Rebuttal Period Ends | 10/24/2024 |

---

[9] 9 TTABVUE 12–13.

| Plaintiff's Opening Brief Due | 12/23/2024 |
| Defendant's Brief Due | 1/22/2025 |
| Plaintiff's Reply Brief Due | 2/6/2025 |
| Request for Oral Hearing (optional) Due | 2/16/2025 |

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b). Such briefs should utilize citations to the TTABVUE record created during trial, to facilitate the Board's review of the evidence at final hearing. Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).

It is the responsibility of each party to ensure that the Board has the party's current correspondence address, including an email address. TBMP § 117.07. The Board must be promptly notified of any address or email address changes for the parties or their attorneys.