THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
March 31, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Ayoub, Inc. and Ayoub Supply, LLC*
*v.*
*ACS Ayoub Carpet Service*
_____

Opposition No. 91211014
_____

Daniel A. Ball of Ball Law Offices PC
    for Ayoub, Inc. and Ayoub Supply, LLC.

Robert J. Kenney of Birch Stewart Kolasch & Birch LLP
    for ACS Ayoub Carpet Service.

_____

Before Ritchie, Adlin and Goodman,
    Administrative Trademark Judges.

Opinion by Goodman, Administrative Trademark Judge:

ACS Ayoub Carpet Service ("Applicant") filed an application to register the

mark AYOUB (in standard characters) for "retail carpeting and rug stores," in

International Class 35; and "carpet and rug cleaning services," in International

Class 37.[1] During prosecution of the application, in response to an Office Action refusing registration of the mark as primarily merely a surname under Section 2(e)(4) of the Trademark Act, 15 U.S.C. § 1052(e)(4), Applicant amended the application to seek registration under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), based on Applicant's alleged "substantially exclusive and continuous use" of the mark in commerce "for at least the five years immediately before the date of this statement." Applicant's claim of distinctiveness was supported by its counsel's declaration.[2]

Ayoub, Inc. and Ayoub Supply, LLC ("Opposers") oppose registration of Applicant's mark on the ground that, when applied to Applicant's services, the mark is primarily merely a surname which has not acquired distinctiveness.[3]

---

[1] Application Serial No. 85566860, filed on March 12, 2012, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), alleging first use anywhere and in commerce since 1952 for both classes. In this decision, Applicant's proposed mark will be displayed in all capital letters; trade names of Applicant, Opposer and third parties and general references to the surname or name Ayoub will be displayed with initial capital letters only.

[2] Applicant also claimed ownership of two prior registrations, one of which incorporated the name AYOUB; this registration (Reg. No. 2908667) was subsequently cancelled under Section 8 during the pendency of this proceeding, and therefore cannot serve as evidence to establish that AYOUB has acquired distinctiveness. *Anthony's Pizza & Pasta International Inc. v. Anthony's Pizza Holding Co.*, 95 USPQ2d 1271, 1277 n.32 (TTAB 2009) ("Expired or cancelled registrations generally are evidence only of the fact that the registrations issued.").

[3] Opposers also pleaded several additional grounds, but did not pursue them at trial or argue them in their brief. In fact, in their reply brief, Opposers expressly waive those claims: "[t]o streamline the proceedings, Ayoub is trying only the relevant issue of acquired distinctiveness of the AYOUB surname. Because the other issues are not being litigated before the Board, there is no need for any further discussion or consideration of them." 48 TTABVUE 7.

Applicant filed an answer which denied the salient allegations in the notice of opposition.[4]

## I. Issues for Decision

### A. Acquired Distinctiveness

As Applicant acknowledges in its brief, "[w]hether AYOUB is primarily a surname is not at issue in this Opposition. Applicant acknowledged as much when it amended its application to seek registration of the mark under Section 2(f). The issue is whether AYOUB has acquired distinctiveness necessary for trademark protection."[5] *See Yamaha International Corp. v. Hoshino Gakki Co. Ltd.*, 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988) ("Where, as here, an applicant seeks a registration based on acquired distinctiveness under Section 2(f), the statute accepts a lack of distinctiveness as an established fact."). In its reply brief, Opposer agrees that the only "relevant issue" is that of "acquired distinctiveness of the AYOUB surname."[6] Thus, the parties agree, as do we, that the only issue before us is whether AYOUB has acquired distinctiveness under Section 2(f) of the Trademark Act. We decide this issue based on the entire record, keeping in mind that Applicant has the "ultimate burden of persuasion" as to acquired distinctiveness, which it must meet by a preponderance of the evidence. *Yamaha,* 6 USPQ2d at 1010.

---

[4] Applicant asserted a number of affirmative defenses in its answer which were not pursued at trial nor argued in its brief. Accordingly, these defenses are deemed waived. *ProMark Brands Inc. v. GFA Brands, Inc.*, 114 USPQ2d 1232, 1236 (TTAB 2015).

[5] 47 TTABVUE 20.

[6] 48 TTABVUE 7.

**B. Amendment to the Supplemental Register**

In the event it does not prevail, Applicant requests, for the first time in its brief on the case, that the application be amended to the Supplemental Register, and if necessary, remanded to the Examining Attorney to enter the amendment.

We conclude that this issue was not tried with Opposer's implied consent. The record does not show that Opposer was fairly apprised, prior to or during the trial period, that Applicant intended to seek to amend the application. In particular, there was no motion to amend the application filed prior to trial, there was no evidence offered relating to the amendment during trial, and Opposers' main brief is devoid of any discussion of Applicant's proposed amendment. Moreover, the motion to amend is untimely. *See e.g., Personnel Data Systems, Inc. v. Parameter Driven Software, Inc.*, 20 USPQ2d 1863 (TTAB 1991) (defendant's motion to restrict identification of goods in involved registration, filed with brief on case, denied).

Accordingly, Applicant's alternative motion to amend is denied.

## II. The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of the involved application. The parties stipulated to submission of testimony by declaration, to the use of any Fed. R. Civ. P. 30(b)(6)

discovery deposition transcripts in their case-in-chief or rebuttal, and to the authenticity of all documents produced by either party during discovery.[7]

### A. Opposers' testimony and evidence.[8]

1. Testimony Declaration of Nabel Ayoub, President of Opposer Ayoub, Inc., with exhibits;

2. Testimony Declaration of Kristopher Ayoub, manager of Opposer Ayoub, Inc., with exhibits;

3. Transcript and exhibits from discovery deposition of Daniel Ayoub, principal of Danco, Inc., d/b/a (Applicant) ACS Ayoub Carpet Service ("Danco");

4. Rebuttal Testimony Declaration of Yousef Abdellatif, proprietor of Plaza Carpet & Rug Cleaning Company;

5. Rebuttal Testimony Declaration of Nabel Ayoub;

6. Rebuttal Testimony Declaration of Kristopher Ayoub;

7. The following materials were submitted under notices of reliance: Internet material (web page from zoominfo.com), printed publications (Yellow Pages advertisements) and excerpt from the transcript of Daniel Ayoub's discovery deposition.

### B. Applicant's testimony and evidence.

1. Testimony Declaration of Michael Ayoub, proprietor of Stand by Flooring, Inc.;

2. Testimony Declaration of Jimmy Ayoub, manager of George Ayoub Carpet & Rug Care;

3. Testimony Declaration of Charlie Ayoub, proprietor of C.I.A. Services, LLC;

4. Testimony Declaration of Daniel Ayoub, Applicant's principal with exhibits;

**5.** Applicant submitted the following materials under notices of reliance: Opposers' responses to interrogatories and requests for admission;[9] excerpts

---

[7] 15 TTABVUE 2. The stipulation is approved.

[8] On the last day of their testimony period, Opposers filed their brief on the case concurrently with their declaration testimony and exhibits. The Board accepted the early-filed trial brief. 46 TTABVUE.

[9] Applicant has provided Opposers' responses to requests for admissions which, for the most part, are denials. While any admissions are properly of record, the denials are not. Trademark Rule 2.120(3)(i), 37 C.F.R. § 2.120(3)(i). *See, e.g., Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473, 1477 (TTAB 2014) ("rule does not extend to denials").

from transcripts of discovery depositions of Nabel Ayoub, Kristopher Ayoub, and Daniel Ayoub; printed publications (Yellow Pages advertisements) and Internet materials (third-party webpage printouts); and official records (court filings from the parties' state court civil action).

## III. Standing

Applicant's admission in its answer, in response to Opposers' allegation that the parties "are direct competitors of each other for the same goods and services, in the same market, in the same trade channels with the same classes of consumers and in the same geographic areas," and Opposers' testimony and interrogatory responses regarding their trade name use of "Ayoub" in connection with carpet and rug cleaning services establish Opposers' standing.[10] *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000) (standing can be shown by establishing a direct commercial interest). *See generally Ritchie v. Simpson,* 170 F.3d 1092, 50 USPQ2d 1023, 1028 (Fed. Cir. 1999) (the threshold for determining standing is whether a plaintiff's belief in damage has a reasonable basis in fact and reflects a real interest in the case).

## IV. Applicant

Applicant's principal, Daniel Ayoub, testified that he is the "founder and a principal of Danco, Inc.," a Virginia corporation, and that ACS Ayoub Carpet

---

[10] Notice of Opposition ¶ 10, 1 TTABVUE 5; Answer, ¶ 10, 4 TTABVUE 3; Decl. of Kristopher Ayoub ¶¶ 5, 6, 7, 8, 10, 11, 17 TTABVUE 55, 56; Applicant's First Notice of Reliance, Ex. 1, Interrogatory nos. 1, 2, 13, 15, 34 TTABVUE 9, 14, 16; and Applicant's Second Notice of Reliance, Ex. 4, Interrogatory nos. 1, 2, 13, 15, 36 TTABVUE 8, 12. Applicant does not contest Opposers' standing in its brief.

Service is "a tradename of Danco."[11] He further testified that "throughout the course of Danco . . . we have used or been known as ACS and/or Ayoub Carpet Service"[12] and that Danco has operated and done business under many names, including registered fictitious names, some of which incorporate the name Ayoub.[13] Applicant's registered fictitious names include Ayoub, Ayoub Carpet Service, Ayoub Oriental Rugs, Ayoub Rug Care and Ayoub Rug Cleaning.[14]

Daniel Ayoub testified that ". . . the Ayoub name is a very powerful name in this industry. It dates back, you know, five, six decades."[15] In March 2002, Danco purchased, at a cost of $234,000, all the assets of Ayoub Rug Cleaning Co., Inc., a carpet, rug cleaning and repair business servicing the Washington D.C. metropolitan area, owned by Daniel Ayoub's uncle, Fred Ayoub.[16] The asset purchase agreement conveyed the trade name, good will associated with the business, and customer lists to Danco.[17]

---

[11] Daniel Ayoub Discovery Deposition, 8:17, 8:20, 9:1, 17 TTABVUE 76-77. Decl. of Daniel Ayoub ¶ 2, 29 TTABVUE 2.

[12] Decl. of Daniel Ayoub ¶ 30, 29 TTABVUE 9.

[13] Decl. of Daniel Ayoub ¶ 2, 29 TTABVUE 2. According to Applicant, the filing of the application in the name of ACS Ayoub Carpet Service, rather than Danco, was an "unintentional error." *Id*. at ¶ 31, 29 TTABVUE 9. We note that Applicant has not filed a request to amend the name of Applicant to correct this mistake. See TMEP § 1201.02(c) (October 2015).

[14] Decl. of Daniel Ayoub, ¶13, 29 TTABVUE 5. Although Applicant states in its brief that ACS Ayoub Carpet Service is a registered fictitious name of Danco, 47 TTABVUE 16, the evidence submitted by Applicant shows that ACS Ayoub Carpet Service is not a registered fictitious name; however, ACS and Ayoub Carpet Service are registered separately as fictitious names in Fairfax County, Virginia. *Id*.; Ex. D, 33 TTABVUE 4-5.

[15] Daniel Ayoub Discovery Deposition, 22:7-9, 17 TTABVUE 89.

[16] Decl. of Daniel Ayoub, ¶¶ 6, 7, 14, 15, 29 TTABVUE 3, 5.

[17] Decl. Daniel Ayoub, ¶¶ 15-16, 29 TTABVUE 5-6, Ex. E, 33 TTABVUE 6-31.

## V. Applicable Law

Under Section 2(e)(4), a mark that is primarily merely a surname is not registrable on the Principal Register absent a showing of acquired distinctiveness. *In re Etablissements Darty et Fils*, 759 F.2d 15, 17, 225 USPQ 652, 653 (Fed. Cir. 1985) (discussing surnames with respect to the Trademark Act and common law). Such a showing is necessary because typically multiple individuals share surnames, and each individual may have an interest in using his/her surname in connection with his/her business. *Id.*

An applicant can make a prima facie showing of acquired distinctiveness of a mark if it establishes substantially exclusive *and* continuous use for five years. Trademark Rule 2.41(a)(2), 37 C.F.R. § 2.41(a)(2). Further, in individual cases appropriate evidence showing advertising expenditures, duration, extent and nature of use as a mark may be sufficient to establish acquired distinctiveness. Trademark Rule 2.41(a)(3), 37 C.F.R. § 2.41(a)(3).

Applicant has argued in its brief that it has established acquired distinctiveness through "continuous and substantially exclusive use" of AYOUB.[18] In this case because of the evidence, discussed below, of Opposers' and third parties' use, Applicant has not shown that it has made substantially exclusive use of the mark.

## VI. Acquired Distinctiveness

### A. Applicant's Evidence of Acquired Distinctiveness

---

[18] 47 TTABVUE 20-24.

8

In support of Applicant's claim that AYOUB has acquired distinctiveness as a mark, Daniel Ayoub testified that "many people refer to us as Ayoub"[19] and that AYOUB has become distinctive "through decades of use"; however, he did not point to any particular time when AYOUB became distinctive, and the record is far from clear on this critical point.[20] Mr. Ayoub stated that distinctiveness in AYOUB could have developed "at any time" and "before I was born."[21] Mr. Ayoub testified that Applicant's predecessor Ayoub Rug Cleaning Co., Inc. used AYOUB as a mark from the 1950s to 2000, and that Danco used AYOUB as a mark from 2002 to 2013.[22] Applicant has provided representative examples of its predecessor in interest's use of AYOUB in telephone directories, namely, the Yellow Pages Telephone Directory, Virginia Suburban Section, Washington (1960-69), the Chesapeake and Potomac Telephone Directory (1975, 1980, 1987, 1993), and the Bell Atlantic Telephone Directory (1995 and 2000). Applicant also provided examples of its current use of AYOUB in the Yellow Pages and other advertising media.[23]

Between 2002 and 2013, after the purchase of Ayoub Rug Cleaning Co., Inc., Danco's gross revenues as a whole rose from "slightly over" $2,000,000 to "over"

---

[19] Daniel Ayoub Discovery Deposition, 13:12-13, 17 TTABVUE 80.

[20] Daniel Ayoub Discovery Deposition, 135:10-11; 135:21-22; 136:1, 17 TTABVUE 116-117.

[21] Daniel Ayoub Discovery Deposition 135:14-15; 135:22, 136:17-18, 17 TTABVUE 116-117.

[22] Decl. of Daniel Ayoub, ¶¶ 5-7, 9, 20, 30, 29 TTABVUE 3-4, 6, 9. Ex. B, 29 TTABVUE 13-18, 30 TTABVUE 2-8, 31 TTABVUE 2-7, and 32 TTABVUE 2-56; Ex. G, 33 TTABVUE 96-122.

[23] Ex. B, 29 TTABVUE 13-18; 30 TTABVUE 2-8; 31 TTABVUE 2-7; 32 TTABVUE 2-56; and Ex. G, 33 TTABVUE 96-122.

$4,300,000, which Applicant attributes to its acquisition of the AYOUB mark.[24] Applicant testifies that its advertising expenditures for the AYOUB mark during this 11-year period averaged $194,000 a year for a total advertising expenditure of $2,339,000.[25] This testimony is offered without context in the trade. As reflected in the advertisements of record, Applicant's main use of the AYOUB mark is as part of the name "ACS Ayoub Carpet Service." Applicant also uses the AYOUB mark as part of the name "Ayoub Oriental Rugs."[26]

### B. Applicant's "Policing" Efforts

Daniel Ayoub testified that since acquiring the assets of Ayoub Rug Cleaning Co., Inc., Danco has policed use of the name Ayoub by others in the carpet and flooring industry, using its judgment "as to when to pursue a potential trademark infringer for its use, or misuse of 'Ayoub' in connection with its business."[27]  In this regard, Applicant and Opposers were involved in state court litigation regarding Opposers' use of the name Ayoub which, due to a settlement, resulted in a stipulated dismissal.[28] Specifically, Applicant and Opposers agreed on the

---

[24] Decl. of Daniel Ayoub, ¶¶ 18-19, 29 TTABVUE 6.

[25] Decl. of Daniel Ayoub, ¶ 20, 29 TTABVUE 6; Daniel Ayoub Discovery Deposition, 196: 2, Opposers' Third Notice of Reliance, Ex. 170, 43 TTABVUE 8. When we calculate the average based on 11 years and the total expenditure on advertising, the average annual spending exceeds $210,000.  We accept the unchallenged total and assume typical annual expenditures of at least $194,000.

[26] Ex. G. 33 TTABVUE 96-122.

[27] Decl. of Daniel Ayoub, ¶¶  21-26, 29 TTABVUE 6-7.

[28] Decl. of Daniel Ayoub, ¶¶ 26-27, 29 TTABVUE 7-8; Applicant's Sixth Notice of Reliance, Ex. 29-31, 40 TTABVUE 2-81.

circumstances under which Opposers could use the name Ayoub, namely Opposer Ayoub, Inc. must use "Ayoub" always with the term "N&H" but both Opposers were allowed to retain their original building signage which may not have included the additional terms required under the agreement.[29] Opposer Ayoub Supply, LLC was allowed to continue business as Ayoub Supply, LLC, Ayoub Supply, and Ayoub Supply Warehouse.[30]

Applicant also has contacted some third parties that use the name Ayoub. While some have agreed to discontinue use of the name Ayoub, others have continued their use of the name with additional terms in an effort to avoid consumer confusion.[31] In particular, Jimmy Ayoub of George Ayoub Carpet & Rug Care agreed "not to use 'Ayoub' to identify the source or origin of the related goods apart from its inclusion of 'Ayoub' as part of the trade name 'George Ayoub Carpet & Rug Care,' or to use 'Ayoub' in any other way that is likely to cause consumer confusion."[32] Michael Ayoub of Stand by Flooring and Charlie Ayoub of CIA Services agreed "not to use 'Ayoub' to identify the source or origin of its goods or services in the industry, or to use 'Ayoub' in any other way that is likely to cause consumer confusion."[33] We discuss Applicant's other "policing" efforts for each of

---

[29] Decl. of Daniel Ayoub, ¶¶ 28, 29 TTABVUE 8; Ex. H, ¶ 4, 33 TTABVUE 125-26.

[30] Ex. H, ¶ 4, 33 TTABVUE 125-26.

[31] Decl. of Daniel Ayoub, ¶¶ 22-25, 29 TTABVUE 7; Decl. of Michael Ayoub ¶¶ 5-6, 25 TTABVUE 3; Decl. of Jimmy Ayoub, ¶¶ 5-6, 27 TTABVUE 3; Decl. of Charlie Ayoub, ¶¶ 5-6, 28 TTABVUE 3-4.

[32] Decl. of Jimmy Ayoub ¶ 5, 27 TTABVUE 3.

[33]; Decl. of Michael Ayoub, ¶ 5, 25 TTABVUE 3, Decl. of Jimmy Ayoub ¶¶ 5-6, 27 TTABVUE 3; Decl. of Charlie Ayoub, ¶ 5, 28 TTABVUE 3; Ex. H, 33 TTABVUE 123-130.

the third parties, as applicable, in conjunction with our discussion of the evidence of third-party use of the name Ayoub.

**C. Opposers' Use of the Surname "Ayoub"**

Since 1990 and 2007, respectively, Opposer Ayoub, Inc. and Opposer Ayoub Supply, LLC have done business as "Ayoub" and traded as "Ayoub," in combination with other terms (listed below),[34] in the Washington D.C. metropolitan area, which includes the District of Columbia and parts of Virginia and Maryland.[35] Opposer Ayoub, Inc. sells, installs, and provides services in connection with carpets, rugs, and hardwood flooring; cleaning services in connection with floor tile and grout, wall to wall carpet, and furniture upholstery; rug appraisals, and floor care supplies.[36] Opposer Ayoub Supply, LLC sells equipment, chemicals and installation supplies to other companies in the carpet and rug services industry.[37]

Opposer Ayoub, Inc. has traded interchangeably as Ayoub N&H, Ayoub N&H Carpet, Ayoub N&H Carpets, Ayoub N&H Carpet Services, Ayoub N&H Carpet & Rugs, Ayoub N&H Carpet & Rug Cleaning, Ayoub Carpet & Rugs, and Ayoub Rug

---

[34] Decl. of Nabel Ayoub, ¶¶ 2-4, 17 TTABVUE 37-38; Decl. of Kristopher Ayoub, ¶¶ 5-6, 17 TTABVUE 55; Kristopher Ayoub Discovery Deposition, 14:6; 16:2-3, 16:17, 20:6-7, Applicant's Third Notice of Reliance, 36 TTABVUE 18, 20, 24.

[35] Decl. of Nabel Ayoub, ¶ 20, 17 TTABVUE 41; Decl. of Kristopher Ayoub, ¶ 7, 17 TTABVUE 55; Applicant's First Notice of Reliance, Ex. 1, 34 TTABVUE 16; Applicant's Second Notice of Reliance, Ex. 4, 35 TTABVUE 14.

[36] Decl. of Kristopher Ayoub, ¶ 7, 17 TTABVUE 55.

[37] Decl. of Kristopher Ayoub, ¶ 8, 17 TTABVUE 55. Ayoub Supply, LLC has had a Facebook page since 2012. Decl. of Kristopher Ayoub ¶ 29, 17 TTABVUE 64.

& Carpet Gallery and has done business as "Ayoub."[38] From 1998 through 2013, Opposer Ayoub, Inc. spent $806,946 in advertising in connection with its use of the name "Ayoub."[39] Its print advertising includes directory listings and display advertisements in the Yellow Pages (1990-1999, 2006, 2008-2009, 2009-2010), SuperPages (2001, 2002, 2004, 2005, 2007, 2008, 2011, 2012-2013), SuperYellowPages (2010-2011), or Yellowbook (2014-2015),[40] advertisements in magazines (1990-1998, 2004, 2006), direct mail advertising (2005-2010), promotional materials left with dry cleaners, advertising in "The Blue Book," and referral cards provided to existing customers.[41] Its paid and unpaid Internet advertising, for the most part as Ayoub N&H Carpet & Rugs, includes advertising

---

[38] Decl. of Nabel Ayoub, ¶¶ 2, 15, 17 TTABVUE 37, 40; Decl. of Kristopher Ayoub, ¶ 5, 17 TTABVUE 55. Exs. 24-25, 19 TTABVUE 108-111, Kristopher Ayoub Discovery Deposition, 14:6; 14:9 16:2-3, 16:17, 20:6-7, 20:10, 36 TTABVUE 18, 20, 24; Exs. 116-120, Applicant's Third Notice of Reliance, 21 TTABVUE 76-106.

[39] Rebuttal Decl. of Kristopher Ayoub, ¶ 5, 45 TTABVUE 3. Opposer Ayoub Supply, LLC does not market to consumers; it is a "business-to-business operation." Nabel Ayoub Discovery Deposition, 20:13-15, Applicant's Third Notice of Reliance, 36 TTABVUE 116.

It is noted that certain exhibits to the Rebuttal declaration of Kristopher Ayoub and the Declaration of Daniel Ayoub were marked "confidential" but were not filed under seal nor were redacted copies of these exhibits submitted. The Board has treated these exhibits as confidential for the present, but because it is the general policy of the Board that all papers in a proceeding be public, Opposers and Applicant are allowed until thirty days from the date of this decision in which to submit redacted versions of these exhibits, failing which they will be treated as part of the public record.

[40] Decl. of Nabel Ayoub ¶¶ 52-63, 17 TTABVUE 49-52, Exs. 112-123, 21 TTABVUE 49-124; Decl. of Kristopher Ayoub, ¶¶ 3, 4, 26, 17 TTABVUE 54, 64-65; Ex. 13, 18 TTABVUE 69-73; Rebuttal Decl. of Kristopher Ayoub, ¶ 4, 45 TTABVUE 3.

[41] Rebuttal Decl. of Kristopher Ayoub, ¶ 4, 45 TTABVUE 3; Decl. of Kristopher Ayoub, ¶¶ 31-32, 34-35, 17 TTABVUE 65; Exs. 18, 19, 20, 22, and 23, 18 TTABVUE 88-100, 104-107; Kristopher Ayoub Discovery Deposition, 20:12-15; 22:6-7, Applicant's Third Notice of Reliance, 36 TTABVUE 24, 26.

on Yelp.com (from 2010 through 2014),[42] Angie's List (since 2005),[43] its website furniturerugcleaning.com (since 2001),[44] a Facebook page (since 2009),[45] both Yellowpages.com and Superpages.com (since the mid-1990s or late 1990s),[46] a listing on Manta.com,[47] and Groupon offers (57,000 emails).[48] Opposer Ayoub, Inc. also uses Internet search engine optimization, Twitter, LinkedIn and Houzz and radio advertising.[49] Opposer Ayoub, Inc. has trucks bearing the mark Ayoub N&H Carpet & Rugs,[50] and its showroom and cleaning facility, located on a state road that averages 8,000 cars daily, has visible signage at the front and back entrances displaying "Ayoub Rug & Carpet Gallery" and "Ayoub N&H Carpet & Rug

---

[42] Decl. of Kristopher Ayoub, ¶ 22, 17 TTABVUE 62.

[43] *Id.* at ¶ 21, 17 TTABVUE 61-62.

[44] *Id.*

[45] Decl. of Kristopher Ayoub ¶ 28, 17 TTABVUE 64; Exs. 14, 15; 18 TTABVUE 74-81, 120-124.

[46] Decl. of Kristopher Ayoub, ¶ 21, 17 TTABVUE 61-62.

[47] *Id.*

[48] Rebuttal Decl. of Kristopher Ayoub, ¶ 6, 45 TTABVUE 4; Decl. of Kristopher Ayoub, ¶ 50, 17 TTABVUE 70, Ex. 72, 19 TTABVUE 66-67. Applicant's First Notice of Reliance, Ex. 1, Interrogatory nos. 6, 8, 34 TTABVUE 11-12.

[49] Applicant's First Notice of Reliance, Ex. 1 Interrogatory no. 8, 34 TTABVUE 11-12.

[50] Decl. of Kristopher Ayoub, ¶¶ 9, 17 TTABVUE 55; Applicant's First Notice of Reliance, 34 TTABVUE 12. In the 1990s Opposer Ayoub Inc.'s trucks carried the names "Ayoub N&H Carpet Services" and "Ayoub N&H Carpet & Rug Cleaning." Exs. 24 and 25, 18 TTABVUE 108-111.

Cleaning," respectively."[51] As part of its promotional efforts, Opposer Ayoub, Inc. also sponsors events for nonprofit organizations.[52]

Opposers' witnesses testified that customers often refer to Opposer Ayoub, Inc. as "Ayoub" and "Ayoub Carpet."[53]

### D. Third-Party Use of the Surname "Ayoub"

Nabel Ayoub, founder and President of Opposer Ayoub, Inc., testified that seven other carpet and rug cleaning businesses, unrelated to Applicant, have used the surname Ayoub for decades in the Washington D.C. metropolitan area, and that Ayoub is a "prominent surname" indicative of quality and experience in the carpet and rug cleaning businesses in the metropolitan area.[54] Nabel Ayoub testified that the businesses that used the name Ayoub that "dominated the industry" in the Washington D.C. metropolitan area were "Hanna Ayoub, Ayoub Rug Cleaning, Plaza Carpet or Plaza Rug Cleaning, and myself [Ayoub N&H] and ACS and George Ayoub and [for at least fifteen years] Mike Ayoub."[55] Nabel Ayoub

---

[51] Decl. of Kristopher Ayoub, ¶¶ 38, 17 TTABVUE 65-66, Ex. 26, 27, 18 TTABVUE 112-115, Rebuttal Decl. of Kristopher N. Ayoub, ¶ 6, 45 TTABVUE 4.

[52] Decl. of Kristopher Ayoub, ¶ 49, 17 TTABVUE 70, Ex. 71, 19 TTABVUE 59-65, Rebuttal Decl. of Kristopher Ayoub, ¶ 6, 45 TTABVUE 4.

[53] Decl. of Nabel Ayoub, ¶ 31, 17 TTABVUE 43-44; Decl. of Kristopher Ayoub ¶¶ 22, 41, 45, 17 TTABVUE 62, 67, 69; Exs. 7-8, 18 TTABVUE 20-43. Kristopher Ayoub Discovery Deposition, 30:1-3, Applicant's Third Notice of Reliance, 36 TTABVUE 34.

[54] Decl. of Nabel Ayoub, ¶¶ 19, 22, 26, 33, 36, 17 TTABVUE 41, 42, 44. Nabel Ayoub Discovery Deposition, 22:9-11, 25:19-22, 26:1, Applicant's Third Notice of Reliance, 36 TTABVUE 118, 121-22.

[55] Nabel Ayoub Discovery Deposition, 24:18-19; 24:21-22, 25:1-2, Applicant's Third Notice of Reliance, 36 TTABVUE 120-21; Decl. of Nabel Ayoub, ¶ 29, 17 TTABVUE 43.

further testified that "[a]ll of the Ayoub companies are small, family owned and operated companies, and not one of them . . . dominates the Washington D.C. metropolitan area."[56]

The record reflects that many of these businesses operate under multiple names incorporating the surname Ayoub.[57] For example, Hanna Ayoub has advertised as Hanna Ayoub Rug Cleaning Co., Inc., Hanna Ayoub Rug Cleaning Co., Hanna Ayoub Oriental Rugs, and Hanna Ayoub; George Ayoub has advertised or traded as George Ayoub Carpet & Rug Care, George Ayoub Carpet Care, George Ayoub Carpet Service and George Ayoub. A summary of the evidence of use of the surname Ayoub by each of the above-identified third parties follows.

1. Hanna Ayoub

The business Hanna Ayoub has been listed or has had display advertisements in the Yellow Pages and/or SuperPages for suburban Maryland, Montgomery County, North and/or South, (1974, 1979, 1980, 1998-99, 2001, 2002, 2004, 2005, 2006, 2008, 2009, 2010, 2012), the District of Colombia (1960, 1961, 1974, 1980, 1982), and Northern Virginia (1977, 1980, 1981, 1982, 1989, 1990, 1991, 1992, 1993, 1997).[58] On the Internet, Hanna Ayoub has a website, located at

---

[56] Decl. of Nabel Ayoub ¶ 37, 17 TTABVUE 44.

[57] Exs. 3-5, 18 TTABVUE 2-18; Exs. 106-122, 21 TTABVUE 2-118.

[58] Decl. of Nabel Ayoub. ¶¶ 46–51, 53-62, 17 TTABVUE 46-52; Exs. 106-111, 21 TTABVUE 2-48; Exs. 113-122, 21 TTABVUE 53-117; Opposers' Second Notice of Reliance, Exs. 154-165, 42 TTABVUE 6-49.

hannaayoub.com, and is listed on Superpages.com and Yelp.com.[59] Applicant also referenced the Hanna Ayoub website, as "relevant to illustrate the manner in which 'Ayoub' is used in the carpet and flooring industry."[60]

Hanna Ayoub's website prominently displays "Hanna Ayoub Rug Cleaning" in capital letters. [61] The website also states "… serving the Washington Metro Area since 1929" and "Oriental Rug Cleaning Since 1929."[62] Hanna Ayoub's Yellow Pages display advertisements show "Hanna Ayoub" in large bold-type, and in some of the advertisements, "Ayoub" is displayed in bigger type than "Hanna."[63] The display advertisements state "Owned and Operated by the Hanna Ayoub Family Since 1929," "Est. 1929," "Established 1929" or "Since 1929."[64] Some advertisements state the years the business has been in existence: "known in

---

[59] Decl. of Kristopher Ayoub, ¶¶ 15-16, 17 TTABVUE 58-59; Exs. 3-4, 18 TTABVUE 2-12.

[60] Applicant's Fifth Notice of Reliance, 38 TTABVUE 2, 4; Ex. 27, 39 TTABVUE 16-17.

[61] Applicant's Fifth Notice of Reliance, 39 TTABVUE 17, Ex. 27.

[62] *Id.* We do not consider the statements made on the Hanna Ayoub website as establishing its prior use. Internet evidence, similar to printed publications, is only admissible for what it shows on its face, and because it does not fall within the exception to the hearsay rule, will not be considered to prove the truth of any matter stated therein. *See Couch/Braunsdorf Affinity, Inc. v. 12 Interactive, LLC*, 110 USPQ2d 1458, 1467 n.30 (TTAB 2014) (Internet webpage evidence admissible only to show what has been printed and not for the truth of what has been printed); *Hornby v. TJX Companies Inc.*, 87 USPQ2d 1411, 1416 (TTAB 2008) ("statements made on website might otherwise be considered hearsay"). Even so, as indicated *infra*, third-party use of the name Ayoub at least during some of the period of time that Applicant claimed substantially exclusive use is corroborated by the totality of the evidence, namely, third-party website print-outs, Yellow Pages and white pages business directory listings, and Yellow Pages display advertisements.

[63] Exs. 106, 107, 108, 109, 110, 115, 117-122, 21 TTABVUE 2-42, 68-75, 82-119.

[64] *Id.*

Washington for over 43 years," "Over 73 Years of Fine Rug Cleaning Service," "Over 75 years of Fine Rug Cleaning Service" or "Serving the Metro Area for over 80 years."[65] The record indicates that Hanna Ayoub advertised the Ayoub name via its webpage as recently as February 2015.[66]

### 2. George Ayoub

The business George Ayoub has had listings or has advertised in the Yellow Pages for Maryland, Northern and/or Southern Montgomery County (1996-1997, 1998-1999, 2001, 2002, 2004, 2005, 2006, 2008, 2009, 2010, 2012), the Yellowbook for Suburban Maryland Montgomery County (2014-2015), and the Northern Virginia Yellow Pages (1989, 1990, 1991, 1992, 1993, 1997, 1999, 2000, 2001).[67] George Ayoub has a website, which is located at georgeayoubcarpet.com.[68] Applicant also introduced evidence of the George Ayoub website, as "relevant to

---

[65] *Id*. Opposers have submitted Yellow Pages directory listings, white pages business directory listings, as well as Yellow Pages display advertisements showing use of Ayoub by third parties. The telephone directory listings themselves are not hearsay. See Fed. R. Evid. 803(17) ("Market quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations" not excluded by hearsay rule.). On the other hand, while the Yellow Pages display advertisements may not be considered for the truth of the matters asserted therein, they do show on their face that the public may have been exposed to the advertisements. *Volkswagenwerk Aktiengesellschaft v. Rose 'Vear Enterprises, Inc.*, 199 USPQ 744, 749 (TTAB 1978), *aff'd* 592 F.2d 1180, 201 USPQ 7 (CCPA 1979) (Yellow Pages directory advertisements are "competent for what [they] show on [their] face and for any logical deduction that may be drawn therefrom.").

[66] Applicant's Fifth Notice of Reliance, Ex. 27, 39 TTABVUE 16-17.

[67] Decl. of Nabel Ayoub, ¶¶ 52-63, 17 TTABVUE 49-52; Exs. 112-123, 21 TTABVUE 50-123. Opposers' Second Notice of Reliance, Exs. 161-169, 42 TTABVUE 30-70.

[68] Applicant's Fifth Notice of Reliance, 38 TTABVUE 2, 4; Ex. 24, 39 TTABVUE 8-11.

illustrate the manner in which 'Ayoub' is used in the carpet and flooring industry."[69]

On the website, "George Ayoub" is more prominently displayed than "Carpet & Rug Care" at the top left of the webpage, and in larger letters than any other type on the webpage.[70] The website states "Proudly serving Sterling, VA and the surrounding areas with the highest quality carpet and rug cleaning since 1987."[71] George Ayoub's Yellow Pages advertisements display "George Ayoub" prominently across the page in large colored letters with "Carpet Care" a large distance away in smaller letters. The advertisements in the record also state "Over 25 Years Experience" "Over 28 Years Experience" or "Over 30 Years Experience."[72]

Applicant contacted George Ayoub regarding George Ayoub's registration of the domain name ayoubcarpetcare.com, which the business agreed to abandon, and regarding what Applicant "perceived to be … commercial misuse of 'Ayoub' such that there was a likelihood of confusion…."[73] George Ayoub "agreed not to use 'Ayoub' to identify the source or origin of the related goods apart from its inclusion

---

[69] *Id.*

[70] *Id.* at 39 TTABVUE 9.

[71] *Id.* As stated in note 61, *supra*, the website print-out is probative for what it shows on its face, namely, that the public may have been exposed to the website and the particular webpage content.

[72] Exs. 115, 117, 118, 119, 120, 121, 122, 21 TTABVUE 69-75, 82-118. As stated in note 64, *supra*, the directory listings are not hearsay while the display advertisements are probative for what they show on their face, namely that the content appeared and the public was exposed to that content.

[73] Decl. of Daniel Ayoub, ¶ 23, 29 TTABVUE 7; Decl. of Jimmy Ayoub, ¶¶ 4, 5, 27 TTABVUE 2-3.

of 'Ayoub' as part of the trade name 'George Ayoub Carpet & Rug Care,' or to use 'Ayoub' in any other way that is likely to cause consumer confusion."[74] The record reflects George Ayoub's advertising of the Ayoub name as "George Ayoub Carpet & Rug Care" via its webpage as recently as February 2015.[75]

### 3. Ayoub Ray

The business Ayoub Ray (or Ray Ayoub) has been listed in the Yellow Pages Maryland, Suburban Southern Montgomery County Edition (1998-1999), the SuperPages, Northern Montgomery County (2001), the Yellow Pages, Southern Montgomery County (2006), and the Yellowbook, Business Section, Maryland, Suburban Montgomery County white pages (2014-2015).[76] The 2006 Yellow Pages listing for Ayoub Ray (or Ray Ayoub) states "We Buy-Sell-Appraise-Clean-Repair Over 35 Years."[77] In the record, the most recent business directory listing for the Ayoub Ray (or Ray Ayoub) business is 2014.

### 4. Ayoub Flooring

Ayoub Flooring, owned by Michael Ayoub, had a website and has a listing in the Business Section of the 2014-2015 Yellowbook, Suburban Maryland Montgomery County.[78] Nabel Ayoub testified that he is uncertain whether Ayoub

---

[74] Decl. of Jimmy Ayoub, ¶ 5, 27 TTABVUE 3. Jimmy Ayoub did not provide any specific testimony regarding George Ayoub's Internet or Yellow Pages advertising.

[75] Applicant's Fifth Notice of Reliance, Ex. 24, 39 TTABVUE 8-10.

[76] Decl. of Nabel Ayoub ¶¶ 53, 54, 58, 63, 17 TTABVUE 49-52; Exs. 113, 114, 118, 123, 21 TTABVUE 53-67, 89-95, 120-124.

[77] Ex. 118, 21 TTABVUE 95.

[78] Decl. of Nabel Ayoub, ¶ 29, 17 TTABVUE 43.

Flooring is continuing to do business under the Ayoub surname.[79] The webpage printout from the website ayoubflooring.webs.com shows "Ayoub Hardwood Flooring, Inc." in large capitalized letters. The webpage printout is dated October 22, 2013 and the webpage itself has a copyright date of 2008.[80]

Michael Ayoub testified that Applicant objected to his use of "Ayoub Hardwood Flooring," and he "agreed not to use 'Ayoub' to identify the source or origin of the related goods, or to use 'Ayoub' in any other way that is likely to cause confusion."[81] Michael Ayoub also testified that his business Stand by Flooring, Inc., "does not use 'Ayoub' to identify the source or origin of the related goods and it has not done so since being contacted by Daniel Ayoub."[82] The most recent business listing in the record for Ayoub Flooring is 2014.

### 5. Use by Other Third Parties

Opposers also provided testimony as to the use of the name Ayoub by Ayoub Bethesda Carpet Service/Paul Ayoub Carpet Service in the 1970s and 1980s. However, based on the record, this company is no longer in business.[83]

---

[79] *Id.*

[80] Ex. 50, 19 TTABVUE 3-5; Ex. 123, 21 TTABVUE 123-124.

[81] Decl. of Michael Ayoub, ¶¶ 4-5, 25 TTABVUE 2-3. Michael Ayoub did not provide any specific testimony regarding Ayoub Hardwood Flooring/Ayoub Flooring's advertising on the Internet or the Yellow Pages.

[82] Decl. of Michael Ayoub, ¶ 5, 25 TTABVUE 3.

[83] Decl. of Nabel Ayoub, ¶ 21, 17 TTABVUE 41; Ex. 109, 21 TTABVUE 28-29.

Two of the businesses identified by Opposers do not use the name Ayoub as part of a trade name, but reference the owner's (or former owner's) personal name or the former owner's initials with the Ayoub surname in their advertising.[84]

Plaza Rug Cleaning Company advertised in the Yellow Pages that its business was "Operated by Fred Ayoub" or "Fred Ayoub, Own,"[sic] or "owned and Operated by the Ayoubs" while the current owner advertises that its business was "founded by F. Ayoub" or "founded by F.N. Ayoub."[85] The current owner of Plaza Rug Cleaning, Yousef Abdellatif, was asked by Applicant to stop using "Ayoub Rug Cleaning" in a Yellow Pages advertisement and he agreed as "he was not interested in fighting over it. . . ."[86] The owner continues to use "Founded by F.N. Ayoub" or "Founded by F. Ayoub" in his Yellow Pages advertising, testifying that when he did not identify himself with the Ayoub founder, he lost business.[87] Mr. Abdellatif testifies that "Customers have continued to call and ask whether we are still

---

[84] Ex. 51, 19 TTABVUE 14; Applicant's Fifth Notice of Reliance, Ex. 25, 39 TTABVUE 13; Exs. 107, 109, 110, 111, 119, 120, 121, 122, 21 TTABVUE 7, 26, 39, 46, 100, 104, 109, 117.

[85] Decl. of Nabel Ayoub, ¶¶ 12, 48-50, 59-62, 17 TTABVUE 39, 47-49, 51-52; Exs. 106-111, 119-122, 21 TTABVUE 2-48, 96-119; Rebuttal Decl. of Yousef Abdellatif, ¶ 4, 44 TTABVUE 4; Kristopher Ayoub Discovery Deposition, 10:4-6, Applicant's Third Notice of Reliance, 36 TTABVUE 14. Opposers also testified that Plaza Carpet and Rug advertised as Ayoub Carpet or Ayoub Rug. Nabel Ayoub Discovery Deposition 8:3-4, 8:20, 9:8-9, Applicant's Third Notice of Reliance, 36 TTABVUE 104, 105; Kristopher Ayoub Discovery Deposition, Applicant's Third Notice of Reliance, 45:20-22, 46:12-15, 36 TTABVUE 49-50.

[86] Rebuttal Decl. of Yousef Abdellatif, ¶ 5, 44 TTAVUE 3.

[87] *Id*. at ¶¶ 3, 4, 44 TTAVUE 3. Yousef Abdellatif's rebuttal testimony declaration did not include any supporting exhibits.

'Ayoub,' and I tell them 'yes'. So I continue to use Ayoub in connection with my business, including advertisements."[88]

C.I.A. Services has listed the proprietor's full name "Charlie Ayoub" on its webpage in large letters or in cursive letters.[89] C.I.A. Services agreed to stop using "Ayoub when it matters" in connection with its promotional materials due to Applicant's objection and agreed "not to use 'Ayoub' to identify the source or origin of its goods or services in the industry, or to use 'Ayoub' in any other way that is likely to cause consumer confusion."[90] The record reflects that C.I.A. Services associated itself with Charlie Ayoub at least as of February 2015, on its webpage, and that Plaza Rug Cleaning Company continues to use and associate the name Ayoub in connection with its services as of 2015.[91]

### E. Evidence of Public Perception

The Yellow Pages and white pages business directory listings show that various unaffiliated Ayoub-named businesses are listed one after the other in the Washington D.C. metropolitan area:

---

[88] *Id*. at ¶ 3, 44 TTAVUE 3.

[89] Decl. of Kristopher Ayoub, ¶ 20, 17 TTABVUE 61; Ex. 51, 19 TTABVUE 13-16; Applicant's Fifth Notice of Reliance, Ex. 25, 39 TTABVUE 12-13.

[90] Decl. of Charlie Ayoub ¶¶ 4, 5, 28 TTABVUE 2-3.

[91] Applicant's Fifth Notice of Reliance, Ex. 25, 39 TTABVUE 12-13; Rebuttal Decl. of Yousef Abdellatif, ¶ 3, 44 TTABVUE 3.

Applicant has received calls from the public asking about its relationship to other carpet and rug cleaning businesses in the Washington D.C. metropolitan area using the name Ayoub as part of their business name, and addresses these inquiries by stating that the owners are "related but [the businesses are] not affiliated."[92] At one time, although not currently, Applicant included information on its website to advise of a lack of affiliation with other users of the name Ayoub in the Washington D.C. metropolitan area, stating:[93]

Ayoub Carpet Service is NOT affiliated with any other Ayoub.

---

[92] Daniel Ayoub Discovery Deposition, 16:21-22, 17:2-3, 18:15-16, 19:5, 19:8-11, 17 TTABVUE 83-86. The record reflects that Applicant, Opposers and all of the third parties who use the name Ayoub as part of their business name operate their businesses in the Washington D.C. metropolitan area, and the individuals who are associated with each company are distantly related.

[93] Daniel Ayoub Discovery Deposition, 78:13; 78:20-21, 79:1, 79:13-15, 80:1-8, 17 TTABVUE 108-110 and Ex. 29 from deposition,17 TTABVUE 134-135.

Some of you might be confused of the various "Ayoub" entities serving the Washington DC metro area in the cleaning and flooring business. Although we are all related and do a good job, we each run our businesses separately and uniquely apart from one another. When hiring a company with "Ayoub" in the title please be sure that you are getting the company that you are looking for. Ayoub Carpet Service which also is known as: Ayoub Rug Cleaning, Ayoub Carpet & Rug Cleaning, Ayoub Carpet & Rugs, Ayoub Oriental Rugs and ACS is a third generation in the carpet and rug business dating back to 1952. Originally founded in Arlington, Va by Joseph Ayoub then owned and operated by the second generation; Jack, Norman, Sam, Said and Fred Ayoub and now owned and operated by the third generation – Dan Ayoub.

Kristopher Ayoub, manager of Ayoub, Inc., testified that, with regard to Applicant's and Opposers' businesses, consumers "don't know if we are the same company or separate companies" and that he has "had a phone call where a potential client was asking if we were the same company with different branches" and he advised the potential client that "we're completely separate companies."[94] Kristopher Ayoub also testified that one of Ayoub, Inc.'s customers wrote a review and noted in the review the different businesses in the Washington D.C. metropolitan area using the name Ayoub:

Apparently there are several Ayoub but with [a] different name after the word Ayoub. When I googled Ayoub, it came up with several companies with that name. I asked them about the different names and I was told that it is a family business and each member has its version of their name for their store. So this review is only for Ayoub N&H in Kensington, MD.[95]

---

[94] Kristopher Ayoub Discovery Deposition, 33:20-21, 34:2-4, 34:6-7, Applicant's Third Notice of Reliance, 36 TTABVUE 37, 38.

[95] Decl. of Kristopher Ayoub, ¶ 44, 17 TTABVUE 69; Ex. 66, 19 TTABVUE 48-50.

Third-party Hanna Ayoub has also advised consumers of Hanna Ayoub's lack of affiliation with the other Ayoub-named businesses. In fact, some of Hanna Ayoub's Yellow Pages advertisements include the statement "Not Affiliated with Any Other Rug Cleaning Service."[96]

**VII. Analysis**

Applicant emphasizes its predecessor-in-interest's long use of AYOUB in connection with carpet and rug cleaning and repair services dating from the 1950s as a basis for AYOUB having acquired distinctiveness. However, "the fact that an applicant has used its mark for a long time does not necessarily establish that the mark has acquired distinctiveness." *In re Tires, Tires, Tires Inc.*, 94 USPQ2d 1153, 1158 (TTAB 2009); *see Flowers Industries Inc., v. Interstate Brands Corp.*, 5 USPQ2d 1580, 1588-89 (TTAB 1987). Applicant also has argued that the monies paid for purchasing its predecessor-in-interest, whose "only asset of real value" was the mark AYOUB, and the resultant increase in its sales revenue after the purchase evidences the acquired distinctiveness of AYOUB.[97] However, this testimony is entitled to little probative weight on the issue of acquired distinctiveness. *Cf. Capital Project Management Inc. v. IMDISI Inc.*, 70 USPQ2d 1172, 1184 (TTAB 2003) (in connection with genericness claim, an asset purchase agreement that conveys proprietary rights in a term and the parties' intentions as

---

[96] Exs. 113, 114, 21 TTABVUE 53-67.

[97] 47 TTABVUE 22.

to conveyance of those rights would not be probative evidence on the question of genericness).

Daniel Ayoub's testimony that Applicant's proposed mark has become distinctive of Applicant's services also is entitled to little probative weight. This statement is merely a conclusory opinion about source recognition among relevant consumers without any probative and corroborating evidence from the consumers themselves. We further note that Daniel Ayoub's testimony regarding sales and advertising of AYOUB does little to help establish that AYOUB acts as a source-identifier in the minds of consumers. Applicant's raw sales and advertising figures are offered without context in the industry. *See Target Brands Inc. v. Hughes*, 85 USPQ2d 1676, 1681 (TTAB 2007) ("The sales figures for 14 years, standing alone and without any context in the trade, are not so impressive as to elevate applicant's highly descriptive designation to the status of a distinctive mark."). As a result, the amounts spent by Applicant on advertising only suggest the efforts made to acquire distinctiveness, and do not demonstrate that the efforts have borne fruit. *Id.*

We next turn to Opposers' contention that Applicant's use of AYOUB has not been substantially exclusive. In this connection, Opposers point to use of the identical surname by Opposers and third parties for identical or related services. We agree with Opposers' assessment that Applicant has not demonstrated that AYOUB has acquired distinctiveness due to a lack of substantially exclusive use.

The record reflects Opposer Ayoub, Inc.'s trade name use since 1990 of the surname Ayoub, in a variety of forms, concurrently with Applicant's predecessor-

27

in-interest and Applicant. Opposer Ayoub, Inc.'s sales and advertising figures from 1998 to 2013 as well as examples of its print and Internet advertising, both paid and unpaid, spanning from 1996 to 2015, demonstrate that Opposer Ayoub, Inc.'s use of the surname Ayoub is not inconsequential.

Evidence and testimony provided by both Opposer and Applicant show use of the surname Ayoub by various third parties who are (or were) in the same or very similar businesses as Applicant. Third parties Jimmy Ayoub and Yousef Abdellatif testified they are still using the name Ayoub in connection with their carpet and rug cleaning businesses. The record includes Daniel Ayoub's acknowledgement that some of these third parties in the Washington D.C. metropolitan area, Hanna Ayoub, George Ayoub and Ayoub Flooring, are using (or have used) the name Ayoub.

We also have testimony and evidence relating to Applicant's placement of information on its old website explaining that the owners of Ayoub-named businesses in the Washington D.C. metropolitan area are wholly separate unaffiliated business entities, although the owners of those businesses do have a familial relationship, and Applicant's similar response to direct inquiries from the public regarding the Ayoub-named businesses in the metropolitan area. This is essentially an admission by Applicant that its use of AYOUB is not substantially exclusive. See Fed. R. Evid. 801(d)(2)(A).

In addition to the testimonial evidence, the record includes documentary evidence of use of the name Ayoub by third parties. Opposers' documentary

28

evidence of third-party use consists of telephone directory listings, and/or telephone directory display advertisements for Hanna Ayoub, George Ayoub, Ayoub Flooring, Ayoub Ray, Plaza Carpet Rug Cleaning Company and Bethesda Carpet Service, as well as Internet website printouts for some of the third parties showing use of the surname Ayoub. Opposers' submission of Yellow Pages telephone listings and display advertising spanning the decades as well as multiple sources of use (telephone listings, advertisements and Internet website evidence) shows the extent of use of the surname Ayoub by some of these third parties. *Cf. In re Broadway Chicken Inc.*, 38 USPQ2d 1559, 1565 (TTAB 1996) (multiple sources of use further corroborates that third-party use is extensive).

The probative value of non-testimonial evidence of third-party use is limited to what it shows on its face; this evidence does not establish the truth of the matter asserted in the documents. *Rocket Trademarks Pty Ltd. v. Phard S.p.A.*, 98 USPQ2d 1066, 1072 (TTAB 2011) (printouts from the Internet "on their face, show that the public may have been exposed to those internet websites and therefore may be aware of the advertisements contained therein"); *Food Products, Inc. v. Swift & Co.*, 194 USPQ 299, 301 n.2 (TTAB 1977) (printed publications are limited to what they show on their face because there is no opportunity to ascertain the basis for the information or to confront and cross-examine the individuals responsible for the information). However, this evidence does show on its face that a number of third parties who are Applicant's competitors have used and promoted the name Ayoub in connection with carpet and rug cleaning or flooring businesses,

29

and under the circumstances, it is likely the public has been exposed to them. *See Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993) (white pages and Yellow Pages listings carry the presumption that the term is being used by third parties in connection with the offering of the advertised services); *Anthony's Pizza & Pasta International Inc. v. Anthony's Pizza Holding Co.*, 95 USPQ2d 1271, 1278 (TTAB 2009) (same); *In re Broadway Chicken Inc.*, 38 USPQ2d at 1565, n.16 (Yellow Pages advertising constitutes technical trademark use). Any consumer seeking a listing for Applicant in a telephone directory, or searching for Applicant's website, is just as likely to come across other "Ayoub" phone listings and websites, given the many third party uses.

The evidence also reveals that Applicant has objected, at least on five occasions, to Opposers' and third-parties' uses of "Ayoub," obtaining agreements from Opposers and four third parties regarding their uses of the name.[98] While demonstrating Applicant's efforts to police its mark, the record shows that Opposer Ayoub, Inc. and these third parties were using the name Ayoub at least some of the time during which Applicant claims substantially exclusive use, and that all but one continue to do so. Concurrent use of the surname Ayoub by Opposer Ayoub, Inc. and at least some of the third parties further diminishes the likelihood that

---

[98] While some competitors may have agreed to discontinue use of AYOUB upon threat of legal action by Applicant, this merely shows a desire by those competitors to avoid litigation, rather than an acknowledgement of the distinctiveness of AYOUB. *See In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7, 8 n.2 (CCPA 1977) ("Appellant argues that various letters (of record) from competitors indicating their discontinuance of use of its mark upon threat of legal action are evidence of its distinctiveness, but . . . such evidence shows a desire of competitors to avoid litigation rather than distinctiveness of the mark."); *Flowers Industries Inc. v. Interstate Brands Corp.*, 5 USPQ2d at 1589 n.9.

the public associates AYOUB with Applicant alone, or recognizes AYOUB as a mark identifying only Applicant's services, particularly because Applicant, Opposers, and the third parties are all in the same general business in the same geographic region. *See e.g., Miller v. Miller* 105 USPQ2d 1615, 1625 (TTAB 2013) (in connection with claim of acquired distinctiveness, applicant's consent and agreement to third party use of the surname Miller for legal services militated against finding substantially exclusive use).

The record also reflects that Opposers and some of the third-party businesses operate under multiple names which incorporate the surname Ayoub.[99] In view of the multiple names used by these third parties and Opposers, the public has been exposed to many uses incorporating the name Ayoub in connection with carpet and rug cleaning and repair businesses.

Applicant states in its brief that it is "not seeking to 'monopolize a surname that has been used by generations of family-owned carpet sales and cleaning businesses in the Washington, D.C. area' … [but] … to protect the trademark rights it acquired from Ayoub Rug Cleaning Co., Inc."[100] In particular, Applicant asserts that third-party users of Ayoub have not been "prohibited from using 'Ayoub' altogether in an attempt [by Applicant] to monopolize the surname" but "requested only to use 'Ayoub' in connection with a further distinctive term to avoid a likelihood of

---

[99] Applicant's Fifth Notice of Reliance, Exs. 22-24, 27, 39 TTABVUE 2-11, 16-17.

[100] 47 TTABVUE 10-11.

consumer confusion."[101] However, granting a Principal Register registration for Applicant's AYOUB mark would be inconsistent with Opposers' and third parties' fairly extensive use of the surname Ayoub in connection with their businesses. Moreover, a Principal Register registration for Applicant's AYOUB mark is not part of the rights acquired from its assignor, whatever those rights may be, and cannot be presumed to be merely recognition of such rights.

While absolute exclusivity is not required, see *L.D. Kitchler Co. v. Davoli, Inc.*, 192 F.3d 1349, 52 USPQ2d 1307 (Fed. Cir. 1999), the widespread use of the surname Ayoub by unaffiliated rug, carpet and flooring businesses is inconsistent with Applicant's claim of acquired distinctiveness of AYOUB. Indeed, the proliferation of such uses clearly shows that Applicant's use is not "substantially exclusive." *See, e.g., Levi Strauss & Co. v. Genesco*, Inc., 742 F.2d 1401, 222 USPQ 939, 940-41 (Fed. Cir. 1984) ("When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances."); *Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972) (evidence insufficient to establish distinctiveness due to significant and continuous concurrent use of term by competitor such that applicant's use was not substantially exclusive); *Miller v. Miller*, 105 USPQ2d at 1624-25 (applicant's use not substantially exclusive due to

---

[101] *Id.* at 47 TTABVUE 10-11.

opposer's use, third-party use, applicant's acknowledgement of third-party use and applicant's consent and agreement to third-party use).

## VIII. Conclusion

In summary, we find that as a result of the cumulative effect of Opposers' and various third-party uses of the surname Ayoub, Applicant's use of AYOUB is not "substantially exclusive" as required under Section 2(f) and therefore the proposed mark has not acquired distinctiveness in connection with the identified services.

**Decision**:  The opposition is sustained and registration to Applicant is refused.

As noted herein, Applicant and Opposers are allowed until thirty (30) days from the mailing date of this decision to submit redacted versions of certain exhibits (Exhibit F, 33 TTABVUE, and Exhibit 153, 45 TTABVUE, respectively), failing which these exhibits will be treated in their entirety as part of the public record.